**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 08-1405-WEB-DWB *Consolidated with* Case |
| L.D. DRILLING, INC.; VAL ENERGY, INC.; and NASH OIL & GAS, INC., | ) ) ) | No. 08-1400-WEB-DWB |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Now before the Court is Plaintiff's Motion for Leave to File First

Amended/Supplemental Complaint and supporting memorandum (Doc. 142, 143),

Defendants' Joint Response in Opposition (Doc. 148), and Plaintiff's Reply Brief

(Doc. 151.) The motion is fully briefed and, after a careful review of the

submissions of the parties, the Court is prepared to rule.

## BACKGROUND

Litigation concerning the Cunningham Storage Field has been ongoing

between Northern and various oil and gas companies for several years in several

different cases. Judge Brown reviewed the history and background to this case in

his Memorandum and Order of November 6, 2009 (Doc. 152),[1] and the Court

incorporates that background and history by reference here.

## DISCUSSION

Federal Rule 15(a)(2) provides, in pertinent part, that "a party may amend its

pleading only with the opposing party's written consent or the court's leave."[2] In

the absence of any apparent or declared reason, such as undue delay, undue

prejudice to the opposing party, bad faith or dilatory motive, failure to cure

deficiencies by amendments previously allowed, or futility of amendment, leave to

amend should be freely given, as required by the federal rule. ***Foman v. Davis***,

---

[1] This Memorandum and Order is also published as ***Northern Natural Gas Company v. L.D. Drilling, Inc., et.al.***, Case No. 08-1405-WEB, 2009 WL 3739735 (D.Kan., Nov. 6., 2009).

[2] Rule 15(a)(2) does not apply where the moving party has not been served with a responsive pleading. *See* Rule 15(a)(1)(A). Rule 7(a) describes the only pleadings allowed in civil actions, and includes an answer to a complaint. Motions are described in Rule 7(b), and are not considered pleadings. In this case, defendant L.D. Drilling, Inc. had not filed an answer at the time the motion to amend was filed, and therefore as to that defendant, Northern has not yet been served with a responsive pleading. As such, Northern would be entitled to amend its complaint as a matter of course under Rule 15(a)(1) as to L.D. Drilling. However, as Northern notes in its supporting memorandum, the document it is seeking leave to file also includes new information that has been obtained after the initial complaint was filed in this case and therefore would also be considered a supplemental complaint pursuant to Rule 15(d). *See* Doc. 143 at 4 n. 1. Rule 15(d) expressly requires a motion and reasonable notice before a supplement complaint is allowed. Because Northern did not specifically argue that it is entitled to filed an amended complaint as to defendant L.D. Drilling, Inc. without leave of court, and because it is seeking to file a document that also encompasses a supplemental pleading, the court finds that it has the discretion to grant or deny the requested amendment/supplemental pleading.

371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1365 (10th Cir. 1993).  A district court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim.  *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992); *see* 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1487 at 642 (1990).  Leave to allow amendment is, however, within the court's sound discretion.  *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir. 1983).  The same discretionary standard applies to pleadings denominated as supplemental pleadings under Rule 15(d).

Defendants set out four reasons why they believe the request for leave to amend or supplement should be denied:

1.     because they have filed motions to dismiss alleging that Northern has split a single cause of action, which motions were still pending at the time Defendants' joint brief was filed;

2.     because defendant Nash has filed a motion to dismiss alleging res judicata, which motion was still pending at the time Defendants' joint brief was filed;

3.     because Defendants claim that K.S.A. 55-1210(c) only allows Northern to retain title to migrated storage gas that has migrated no further than "adjoining property" and almost all of the properties at issue are too far away from the storage field to count as "adjoining property;" and

4.     because Northern has initiated new proceedings in the FERC seeking to expand the Cunningham Storage Field, which expansion would

encompass all the properties identified in the proposed
amended/supplemental complaint, and which places an undue burden
on Defendants by requiring them to simultaneously defend
proceedings in two separate forums.

(Doc. 148 at 2-3.)

The first two reasons are no longer applicable. Judge Brown has now ruled

on all the pending motions to dismiss and has denied them. *See* Doc. 152. As to

the third reason, the "adjoining property" issue, Defendants claim that the

amendment would be futile because Northern cannot establish that it has retained

title to storage gas that has migrated beyond the "adjoining property," and the

requested amendment would also be prejudicial to Defendants. The claim of

prejudice is that it would be unfair to Defendants, and particularly the proposed

new defendants, to have to expend excessive costs of defense before the court has

the opportunity to rule on "the purely legal issue of higher priority: whether

Northern under Kansas law *retains title* to gas produced form wells on non-

adjoining property . . . ." (Doc. 148 at 7.) The same argument of excessive

defense costs is also the basis for the fourth contention that litigation by defendants

in two forums -- this court and FERC -- would be prejudicial. (Doc. 148 at8-9.)[3]

---

[3] This litigation has now expanded to a third forum with Northern's filing of a
Petition in the District Court of Pratt County, Kansas, against several purchasers of gas
produced by the present defendants in this case. *See* Doc. 159-1.

## A.    Futility.

(1)    Counts I through VII - title to migrated gas, unjust enrichment and conversion.

Defendants' argument that K.S.A. 55-1210(c) only allows Northern to retain title to migrated storage gas that has migrated no further than "adjoining property" effectively raises the issue of futility of the proposed amendment.  Thus, the Court must determine if the proposed amended and supplemental complaint could withstand a motion to dismiss.  In light of the Supreme Court decisions in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) and ***Erickson v. Pardus***, 551 U.S. 89, 93-94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), the Tenth Circuit recently restated the standard for ruling on motions to dismiss under Fed. R. Civ. P. 12(b)(6).  ***Alvarado v. KOB-TV, L.L.C.,*** 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007).  The Court now looks at what is described as a "plausibility" standard.  *Id.  See also, **Ashcroft v. Iqbal***, __U.S.__, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  This Court has held that under the restated standard,

> [t]he court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to 'state a claim to relief that is plausible on its face,' *Bell Atlantic Corp. v. Twombly*, __ U.S. ___, ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), or when an issue of law is dispositive.  *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The

complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127 S.Ct. at 1964-65. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir.2006). Viewed as such, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.' *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.' *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

*Raytheon Aircraft Co. v. U.S.*, 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007). The burden is on Defendants to establish the futility of Plaintiff's proposed amendment. *Pekareck v. Sunbeam Products*., No. 06-1026-WEB, 2006 WL 1313382, at *3 (D. Kan. May 12, 2006).

Plaintiff's amended complaint bases its claim of ownership of storage gas which has allegedly migrated to Defendants' leases on the provisions of K.S.A. 55-1210(c)(1), and quotes that provision of the statute which states:

(c)  With regard to natural gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased:

> (1) The injector, such injector's heirs, successors and assigns shall not lose title to or possession of such gas if such injector, such injector's heirs, successors or assigns can prove by a preponderance of the evidence that such gas was originally injected into the underground storage.

*See* Doc. 142-1 at ¶ 91. Obviously, before an injector can "lose title" to injected gas, there must be some determination that an injector in fact retains title to gas once it is injected into the ground. That principle is established by K.S.A. 55-1210(a), which provides that

> All natural gas which has previously been reduced to possession, and which is subsequently injected into underground storage fields, sands, reservoirs and facilities, whether such storage rights were acquired by eminent domain or otherwise, shall at all times be the property of the injector, such injector's heirs, successors or assigns, whether owned by the injector or stored under contract.

Judge Brown has previously ruled on the meaning of "adjoining property" in this case as that phrase is used in K.S.A. 55-1210(c)(2) concerning an injector's right to conduct tests on "adjoining property." After reviewing the holding and reasoning of the Kansas Supreme Court in ***Williams Natural Gas Co. v. Supra Energy,*** 261 Kan. 624, 931 P.2d 7 (1997), Judge Brown concluded that "Northern's storage rights area is properly considered a part of its underground storage 'fields, sands, reservoirs and facilities,' despite the fact that it has not been

approved for use by FERC or the KCC." ***Northern Natural Gas Co. v. L.D. Drilling, Inc.***, 618 F.Supp. 1280, 1292 (D.Kan. 2009).[4]

Because the identical phrase "adjoining property" is used in both subsections (c)(1) and (c)(2), the Court concludes that the phrase must be defined the same as to both subsections. Using the Court's prior definition of "adjoining property," it appears that some of Defendants' wells which Northern contends are producing its storage gas are not located close enough to Northern's storage area to qualify as "adjoining property." As to any of those wells or leases, Defendants are arguing that Northern has "lost title" under the provisions of 55-1210(c)(1).

Northern disputes Defendants' interpretation of the statute, citing the following language by the Tenth Circuit in ***Northern Natural Gas Co. v. Nash Oil & Gas, Inc.,*** 526 F.3d 626, 632 (10th Cir., 2008):

> In 1993, however, the Kansas legislature abolished the rule of capture with respect to migrated gas <u>without limit to where the gas migrates.</u> Kan. Stat. Ann. § 55-1210(a) - (b), (c)(1). Now, an injector of natural gas, such as Northern, does not lose property rights to injected gas when such gas migrates beyond the boundaries of the injector's storage facilities. (emphasis added).

---

[4] The area in which Northern has acquired storage rights but which is not yet certified by the KCC or FERC is shown on Doc. 23, Ex. C. Northern has now sought to expand its certified storage field by a recent application to FERC, but no decision on that application has yet been made by FERC. *See* Doc. 148-1 (Northern's Application).

Northern acknowledges that 55-1210(c)(2) concerning testing creates a <u>limited</u> right to test only as to wells located on "adjoining property," but claims that the legislature's use of the same phrase ("adjoining property") in 55-1210(c)(1) does limit Northern's right to seek recovery for storage gas that escapes from its storage field <u>no matter how far away that gas may migrate</u>. This argument, however, effectively ignores the specific language of 55-1210(c)(1) and treats that section as if the phrase "adjoining property" was not even found in that subsection.[5] Moreover, as to the Tenth Circuit's opinion in the earlier ***Nash*** case, the portion cited and relied upon by Northern is, at best, *dicta*. The quoted language appears in a general section reviewing the history of the rule of capture and has no direct bearing on the holding in the case which dealt with the testing subsection in 55-1210(c)(2). While the opinion does cite 55-1210(c)(1) in stating that the rule of capture has been abolished with respect to gas regardless of where it may migrate, it does not mention or discuss the meaning of the phrase "adjoining property" as it is used in that subsection.

---

[5] Northern's discussion of the fact that this subsection also deals with migration of gas to a "stratum, or portion thereof" does not seem to apply in this case. The Court construes "stratum" to have its normal dictionary meaning which is "a mass or thin sheet of sedimentary rock or earth of one kind formed by natural causes and made up of a series of layers lying between beds of other kinds." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986 Ed.). Thus, subsection (c) deals with migration that is both vertical (to another stratum) and horizontal (to adjoining property). Here, there is no indication that Northern's gas has migrated vertically outside of the Viola or Simpson formations.

A cardinal rule of statutory construction requires that a statue is to be construed so that every clause and word is given effect, if possible. ***Tews v. Renzenberger, Inc.***, 592 F.Supp.2d 1331, 1347 (D.Kan., 2009). *See also*, ***Parks v. Anderson***, 406 B.R. 79, 93 (D.Kan. 2009) (Melgren, J.) (it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme). Applying that rule in this case, it is possible that Defendants may be able to establish, as a matter of law, that the statute does not allow Plaintiff to retain title to storage gas that has migrated horizontally to areas that are beyond any adjoining property to it storage field. However, at this stage of the proceedings, the parties have not adequately briefed that issue nor have they presented any evidence of legislative history of the statute to support their interpretation. While this legal issue may or may not ultimately be decided in Defendants' favor after motions for summary judgment are filed and fully briefed, the Court cannot conclude from the record before it now that Plaintiff's proposed amendment, insofar as it involves non-adjoining property, is futile. Furthermore, some of the wells and additional property covered by the proposed Amended Complaint do appear to qualify as adjoining property as that phrase has been interpreted in this case. Therefore, the Court concludes for purposes of the motion to amend only, Plaintiff has pled sufficient facts to present

a claim that is plausible on its face as to the proposed Counts I.  Furthermore, the claims for conversion and unjust enrichment are based upon Northern's claim that it has not lost title to its storage gas,[6] and the Court also finds for purposes of the motion to amend that these claims are not futile.

    (2)    <u>Counts VIII and X - nuisance and civil conspiracy.</u>

A separate analysis of futility is required as to the allegations of nuisance and civil conspiracy pled in Counts VII and X of Plaintiff's proposed amended/supplemental complaint.  These will be discuss in reverse order.

    *(a)  Count X - civil conspiracy.*

Count X adds only three new paragraphs to support a claim for a civil conspiracy by all Defendants.  Paragraph 144 alleges, on information and belief, that Defendants are parties to an agreement to engage in activities to collect, pump and/or sell Plaintiff's storage gas or to create a nuisance.  Paragraph 145 claims, in a single sentence, that Defendants have engaged in unlawful and/or overt acts and

---

[6] For example, under Kansas law, "[c]onversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights."  ***Cline v. Southern Star Cent. Gas Pipeline, Inc.,*** 191 Fed.Appx. 822, 828, 2006 WL 2458673 at * 7 (10th Cir. 2006), citing ***Bomhoff v. Nelnet Loan Servs., Inc.,*** 279 Kan. 415, 109 P.3d 1241, 1246 (2005).  Thus, it is critical that Northern first prove that it has title to the migrated gas in order to proceed with a claim for conversion against defendants.

omissions constituting a private nuisance.  Finally, Paragraph 146 alleges that as a result of Defendants' acts, Northern has suffered damages as a proximate result of Defendants' unlawful acts.

*Twombly* counsels that '[f]actual allegations must be enough to raise a right to relief above the speculative level.'  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007).  While detailed factual allegations are not required, Plaintiff has an obligation to provide the grounds of entitlement to relief which requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *Id.*  The Court concludes that Plaintiff has not adequately provided the grounds of entitlement to relief based upon a civil conspiracy and therefore Count X is futile and should not be included in any amended/supplemental complaint.

The Court's concern here relates to the legal position occupied by the parties Plaintiff now seeks to add.  For example, several named persons are claimed to own "overriding royalty interests" in the subject wells and properties.  *See e.g.*, Doc. 142-1 at ¶ 81.  An overriding royalty interest has been defined as:

> [A] royalty carved out of the working interest created by an oil and gas lease.  Most frequently it is created subsequent to a lease by outright grant or by a reservation in the assignment of the operating rights.  It is an interest in oil and gas produced at the surface, free of the expense of production and its outstanding characteristic is that its

> duration is limited by the duration of the lease under which it is created.

***Campbell v. Nako Corporation,*** 195 Kan. 66, 70, 402 P.2d 771, 775 (1965).  It is a "non-operating" interest which has no right to determine or even vote on the location, drilling or operation of wells on the leasehold.  Because overriding royalty owners have no operating rights concerning the wells or leases, it is difficult to construct a factual situation where such an non-operating overriding royalty owner could effectively conspire with the operator to steal storage gas from Plaintiff.  Plaintiff provides no information to support such a conspiracy other than a vague allegation based only on information and belief.  This is not sufficient to meet the requirements of ***Twombly***.

Likewise, other newly identified persons or entities are alleged to own non-operating working interests in the subject wells or leases.  *See e.g.* Doc. 142-1 at ¶ 80.  Plaintiff describes these individuals as "Non-Operating Working Interest Defendants" and further acknowledges that other entities operate the wells and leases. *See e.g.*, Doc. 142-1 at ¶¶ 78, 80.  Plaintiff provides no information about the rights of these non-operating working interest owners to have input, vote or direction concerning the location of wells to be drilled or the manner in which wells are produced and operated.  Again, at best Plaintiff's proposed amended or supplemental complaint is nothing more than a formulaic recitation of the elements

of a cause of action which is insufficient under **Twombly.** Therefore, the claim in Count X (civil conspiracy) is futile <u>insofar as it relates to any claims against the non-operating defendants</u>.

        *(b) Count VIII - Nuisance.*

Count VIII alleges that Defendants, including the two types of non-operating interest owners described above, have individually or collectively "created or caused to be created 'pressure sinks' that have drawn, and continue to draw, Northern's storage gas from the Cunningham Storage Field." (Doc. 142-1 at ¶ 136.) The amended complaint further alleges that "[t]hrough operation of, and production from, the [subject wells], Defendants have themselves or have caused others to unreasonably interfere with" Northern's use of the storage field, and that the "[c]ontinued operation of, and production from [the subject wells] will cause continued unreasonable interference" with Northern's rights. (Doc. 142-1 at ¶¶ 138, 140.)

The recognized jury instruction in Kansas pertaining to a nuisance states:

> A person is liable in damages for the creation or
> maintenance of anything that unreasonably interferes
> with the rights of another, whether in person, or property,
> and thereby causes (him) (her) harm, inconvenience, or
> damage. *(A thing such as that just mentioned is
> sometimes called a nuisance.)*

PATTERN INSTRUCTIONS KANSAS 4TH CIVIL, § 103.06.   In ***Culwell v. Abbott***

***Construction Co.***, 211 Kan. 359, 361-62, 506 P.2d 1191 (1973), the Kansas

Supreme Court noted that there is perhaps no more impenetrable jungle in the

entire law than that which surrounds the word "nuisance," and it therefore

proceeded to distinguish a private nuisance from a public nuisance as follows:

> Private nuisance historically has been and is a tort related
> to an <u>unlawful interference</u> with a person's use or
> enjoyment of his land.  The concept of a private nuisance
> does not exist apart from the interest of the landowner.
> Hence, a private nuisance is a civil wrong, based on a
> <u>disturbance</u> of some right or interest in land.  The remedy
> for it lies in the hands of the individual landowner whose
> rights have been disturbed.  (emphasis added).

Plaintiff's claimed unlawful interference or disturbance in this case is the operation

and production of the subject wells.  However, Plaintiff fails to identify how a non-

operating interest owner, who has no right to determine the location of wells, the

rate of production or other operating parameters of the wells, can be liable for the

creation of the alleged nuisance.  Unlike conversion, where the mere receipt of

moneys from the sale of another person's property may qualify to constitute a

conversion, here it takes <u>affirmative acts</u> to create a nuisance.  Plaintiff's amended

complaint acknowledges this when it claims that "Defendants' actions and/or

omissions constitute a private nuisance. . . ."  (Doc. 142-1 at ¶ 139.)  Because

Plaintiff wholly fails to identify how a non-operating interest owner can cause the

nuisance claimed in this case, it has failed to state a plausible claim for nuisance against such non-operating interest owners. Therefore, the claim in Count VIII (nuisance) is futile insofar as it relates to any claims against the non-operating defendants.

**B.     Undue Prejudice to Defendants.**

Litigation is now proceeding in three separate jurisdictions -- this court, FERC and the District Court of Pratt Count, Kansas -- all of which involve issues that are related to Northern's claims that Defendants are stealing its storage gas. Defendants claim that this causes undue prejudice to them due to the expense of defending in multiple arenas, and for that reason the motion to amend should be denied. The court acknowledges that the multiple proceedings in various courts and agencies complicates the litigation process and increases the costs to all parties. However, at least one reason for the involvement of multiple courts or agencies is related to jurisdictional issues. This is demonstrated by the most recent filing in Pratt County District Court which Northern has conceded was necessary because the defendants in that state court case could not be added as defendants in this federal case without jeopardizing this court's diversity jurisdiction. While Defendants characterize Northern's litigation tactics as designed to wear out or bankrupt them, the court cannot conclude at this stage of the proceedings that

Northern has pursued litigation in these separate forums for any unethical or unlawful purpose. Thus, the court cannot find that Defendants would suffer undue prejudice if the motion to amend were granted.

Defendants also urge that this case might be decided more quickly and efficiently on the legal question of whether Northern has lost title to its storage gas to the extent that the gas has migrated beyond any adjoining property, and argue that the amendment should not be granted until that issue has been resolved. To the extent that this issue is a purely legal one, Defendants have always been able to file a motion for summary judgment on that issue. To date, however, they have not done so. The court is not inclined to simply put this entire case on hold until such a motion is filed, briefed and decided.

### C. Jurisdictional Issues.

While not raised by Defendants in their opposition to the motion to amend or supplement, the Court has some serious concerns about subject matter jurisdiction based on some of the allegations in Plaintiff's proposed amended and supplemental complaint. Because courts of the United States are courts of limited jurisdiction, if the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter *sua sponte*. ***Basso v. Utah Power and Light Co.,*** 495 F.2d 906, 909 (10th Cir. 1974).

The proposed amended and supplemental complaint alleges federal court jurisdiction based solely on diversity of citizenship. (Doc. 142-1 at ¶¶ 44, 45.) The court's concern relates to allegations concerning the citizenship of several entities that are limited liability companies. *See* Doc. 142-1 at ¶¶ 10 (Allan Exploration, LLC), 23 (High Plains Eagle LLC), 31 (Lies Exploration, LLC) and 41 (Vision Investments, LLC a/k/a Vision Investments of Pratt, LLC). As to each of these entities, the allegations are in the form normally used to define the citizenship of corporations, *e.g.*, organized under the laws of the state of Kansas with its principal place of business in Kansas. *Id.* at ¶ 10. These allegations, however, are legally insufficient to establish the citizenship of a limited liability company for purposes of assessing diversity jurisdiction. This court has recently had occasion to consider this very question:

> The issue of how to treat limited liability companies or LLC's for jurisdictional purposes is unsettled. The Supreme Court has dealt with this issue as to limited partnerships, *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990), by holding that the citizenship of the limited partnership must be considered by reference to the citizenship of all its limited partners. The Supreme Court has not had the occasion to make a similar ruling as to limited liability companies, but it has noted that courts of appeal have held that the citizenship of each member of an LLC count for diversity purposes. See *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 586 n. 1 (2004) (5-4 decision) (Ginsburg, J., dissenting) (*citing GMAC Commercial Credit LLC v.*

*Dillard Dept. Stores*, 357 F.3d 827, 829 (8th Cir.2004); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir.1998)). Courts in this district have followed the rule that the citizenship of an LLC must consider the citizen of each member of the LLC. *See Birdsong v. Westglen Endoscopy Center, L.L.C.*, 176 F.Supp.2d 1245, 1248 (D.Kan.2001); *Tilzer v. Davis, Bethune & Jones, LLC*, No. 03-2661-JWL, 2004 WL 825829 at * 2 (D.Kan., Apr. 15, 2004); *Friess v. Quest Cherokee, LLC*, No. 06-2573-KHV, 2007 WL 473729 at * 1 (D.Kan., Feb. 9, 2007). In *Friess,* Judge Vratil rejected defendant's arguments that the Tenth Circuit had held in *Shell Rocky Mtn. Prod. LLC v. Ultra Res., Inc.*, 415 F.3d 1158 (10th Cir.2005), that an LLC is a citizen of the state where it is organized and also of the state of its principal place of business, concluding that the language cited by defendant was only dicta and had not been subsequently cited by the Tenth Circuit for such a proposition. 2007 WL 473729 at * 1.

In this case, the moving parties have not included any allegation or supporting evidence as to who are members of the KBR limited liability company, and no allegation or supporting evidence as to the citizenship of any such members. Lacking this critical information, the court cannot conclude that joinder of KBR will not destroy the court's diversity jurisdiction.

*Martin K. Eby Const. Co., Inc. v. One Beacon Ins. Co.*, No. 08-1250-WEB, 2009 WL 635134, * 3 (D. Kan., Mar. 10, 2009).

Because the allegations concerning the citizenship of the above-named limited liability companies are legally insufficient, Plaintiff cannot meet its burden of establishing diversity jurisdiction as the proposed amended and supplemental complaint now reads.  Therefore, without correction of this defect, it would be

improper to allow the amended and supplemental complaint to be filed.  The court will, however, give Plaintiff the opportunity to revise the allegations concerning these four limited liability companies in a manner sufficient to show complete diversity of citizenship.  If, however, after further investigation, it appears that the presence of any of these four limited liability companies would destroy diversity jurisdiction, then any such limited liability company must be removed as a party from any amended and supplemental complaint.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File First Amended/Supplemental Complaint is GRANTED IN PART and DENIED IN PART, as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that the amended and supplemental complaint shall be revised to remove any claims under Counts VIII and X as against any of the newly named defendants who are identified as Non-Operating Working Interest Defendants and Overriding Interest Defendants.

**IT IS FURTHER ORDERED** that the amended and supplemental complaint shall be revised to properly identify the citizenship of any limited liability company named as a defendant as outlined in this Memorandum and Order; furthermore, if any such limited liability company shall subsequently be determined to have a citizenship that would cause a lack of diversity of citizenship

jurisdiction under 28 U.S.C. § 1332(a), that limited liability company shall be

removed as a party in the amended and supplemental complaint.

Dated at Wichita, Kansas, on this 18th day of December, 2009.

   s/ DONALD W. BOSTWICK
Donald W. Bostwick
United States Magistrate Judge