IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) | No. 08-1405-WEB-DWB |
| | ) | (Consolidated with No. |
| Plaintiff, | ) | 08-1400). |
| | ) | |
| v. | ) | |
| | ) | |
| L.D. DRILLING, INC., | ) | |
| VAL ENERGY, INC., | ) | |
| NASH OIL & GAS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## Memorandum and Order

Northern Natural Gas Company brought this action claiming the defendants are producing storage gas that has migrated from Northern's Cunningham Storage Field to wells operated or owned by the defendants. The Amended Complaint includes claims for title, declaratory and injunctive relief; conversion; unjust enrichment; nuisance; and civil conspiracy. Doc. 168. The defendants deny the claims and assert various counterclaims, including tortious interference with contract and business expectations; outrage; trespass; nuisance; slander of title; inverse condemnation; abuse of process; unjust enrichment; lost production; and punitive damages. The matter is now before the court on the following motions: Northern's Motions to Dismiss Counterclaims (Docs. 241, 266, 279, 281, 283, 292, 294, and 298); and defendants' Motion for Summary Judgment (Doc. 331).

The court's jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). The substantive law of Kansas governs the dispute. *See Morring Capital Fund, LLC v. Knight*, 2010 WL 2881529 (10th Cir., Jul. 22, 2010) (substantive law of the forum state governs in diversity action).

I. **Motions to Dismiss**.

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Mayfield v. Merchant*, 2010 WL 397083 (D. Kan., Jan. 25, 2010) (*citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As explained by Chief Judge Vratil in *Mayfield*:

> The Court need not accept as true those allegations which state only legal conclusions. *See id.; Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough for him to make threadbare recitals of a cause of action accompanied by mere conclusory statements. *Twombly*, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully-it is not enough to plead facts that are "merely consistent with" defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Id.* Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged-but not "shown"-that the pleader is entitled to relief. *Id.* at 1950. Finally, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) depends upon the type of case. *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir.2008) (*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 232-32 (3d. Cir.2008)).

A.  <u>Northern Motion to Dismiss Counterclaims of L.D. Drilling and L.D. Davis</u> (Doc.

241).  1.  <u>Tortious interference</u>.  Northern contends these two "LD defendants" fail to allege the

essential elements of a claim for tortious interference with contract or business expectation.

Northern argues that although the defendants claim "interference" with contracts between LD

and their gas purchasers, they have not alleged an actual or constructive breach of contract, nor

do the facts alleged show that Northern caused a material change in relationship between LD and

their purchasers.  With regard to defendants' allegation that gas purchasers suspended payments

to the defendants and demanded additional security for purchases, Northern argues this was

merely the invocation of a right of the purchasers pursuant to their contracts and was not a

material change in the parties' business relationship.  Northern thus argues the defendants have

failed to allege facts showing an essential element of the claim.  Moreover,  absence of

justification is an essential element of this tort, and Northern contends the defendants have failed

to show this element because all of information provided by Northern to the gas purchasers was

truthful.

The LD defendants concede they have not alleged a breach of contract (Doc. 301 at 5),

but argue they have alleged the loss of a business expectancy of selling their gas to ONEOK and

to Lumen, or to other purchasers, and of receiving payment for such sales.  They contend they

are not realizing that expectancy because of Northern's wrongful conduct.

The essential elements of a claim of tortious interference with a (prospective) business

advantage under Kansas law are (1) the existence of a business relationship or expectancy; (2)

the defendant's knowledge of the business relationship or expectancy; (3) the defendant's

intentional misconduct which interfered with the plaintiff's business relationship or expectancy

which, but for the defendant's conduct, the plaintiff was reasonably certain would have continued in the future; and (4) damages. *Merkel v. Keller*, 232 P.3d 887 (Kan.App., June 25, 2010 (Table, text in Westlaw, No. 102,239) (unpublished) (citing *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 424, 77 P.3d 130 (2003)). Also, "Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby." *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106 (1986). As noted in *Turner*, such claims are predicated on malicious conduct by a defendant, and in certain situations a person may be privileged or justified to interfere with contractual relations. The term "justification" is employed "to denote the presence of exceptional circumstances which show that no tort has been in fact committed and to connote lawful excuse which excludes actual or legal malice." *Turner*, 240 Kan. at 12-13, 722 P.2d 1106 (quoting 45 Am.Jur.2d, Interference § 27).[1]

The tortious interference counterclaim of L.D. Drilling and L.D. Davis alleges that counterclaimants had a business expectation of selling gas produced by their wells to Lumen and other purchasers, based in part on existing contracts, which they were reasonably certain to realize; that Northern was aware of this expectation; that Northern wrongfully interfered with the expectation by means of "knowing and reckless falsehoods," in widespread communications to Lumen and others that the gas being produced is storage gas to which Northern has title; and that

---

[1] In determining whether conduct is improper, the following factors are considered: (1) the nature of the defendant's conduct; (2) the defendant's motive; (3) the interests of the other with which the defendant's conduct interferes; (4) the interests sought to be advanced by the defendant; (5) the social interests in protecting the freedom of action of the defendant and the contractual interests of the other; (6) the proximity or remoteness of the defendant's conduct to the interference; and (7) the relations between the parties. *Turner*, 240 Kan. at 14, 722 P.2d 1106.

counterclaimants suffered damages as a result. *See* Doc. 175 at Pp. 22-28. Assuming all of these facts are true, as the court must on a motion to dismiss, they plausibly give rise to an entitlement of relief. Northern contends it is implausible that it would misrepresent its own belief that it has title to the gas, but that position appears to be based on a weighing of the evidence – including the results of wells tests conducted in this litigation and FERC's conclusion that gas is indeed migrating from the storage area – which the court cannot do on a motion to dismiss under Rule 12(b)(6).[2] Northern has not explained why counterclaimants' theory that the gas being produced is not storage gas is inherently implausible. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As *Iqbal* noted, this requirement "is not akin to a 'probability requirement.'" Northern also points out that "[i]f a defendant conveys truthful information to a third party which damages the plaintiff's expectancy, it is generally held that the act is justified and not actionable. *See Merkel, supra (citing Cohen v. Battaglia*, 41 Kan.App.2d 386, 402-03, 202 P.3d 87 (2009)). Again, however, the court must accept the truth of the counterclaimants' allegations for purposes of the motion to dismiss under Rule 12(b)(6). Under that standard, the allegations are sufficient to state a claim for relief.

    2. <u>Intentional Infliction of Emotional Distress/Outrage</u>. Northern contends the defendants have resorted to labels to support this claim and have not alleged facts showing outrageous conduct "utterly atrocious or intolerable in a civilized society." It further argues the

---

[2] Northern's motion to dismiss this claim was not based upon any asserted preclusive effect of findings by FERC with regard to migration. *See* Doc. 242 at Pp. 4-11. Accordingly, the court does not address that issue.

claim fails to allege facts showing that defendant L.D. Davis suffered severe emotional distress as a result of Northern's conduct. The defendants contend their allegations are sufficient, pointing to the history of litigation conducted by Northern and arguing that whether Northern's conduct rises to an actionable level presents a jury question.

In Kansas the tort of outrage is the same as the tort of intentional infliction of emotional distress. *Valadez v. Emmis Communications*, 229 P.3d 389, 394 (Kan. 2010). The claim requires proof of four essential elements: (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. *Id.* "Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id* (citation omitted).

It is not enough for such a claim that a party may have acted with a tortious or even a criminal intent. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts*, §46(1), comment. d. Northern's repeated resort to the legal system and the other facts alleged here by counterclaimants, including allegations of Northern's "intentional concealment" and "unfounded accusations" do not rise to the level of extreme and outrageous conduct

sufficient to state a claim.  The court has already ruled that Northern's allegations in this complaint state a claim that is legally separate from prior litigation involving the parties. Moreover, as the court noted previously, the underground migration of gas presents difficult issues of proof and determination by the courts and by private parties alike.  The instant allegations show an ongoing dispute about the possible underground migration of storage gas. *Cf. Restatement (Second) of Torts*, §46, comment g ("The actor is never liable ... where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.").   The allegations fail to state a claim for the tort of outrage.

3.  <u>Slander of Title</u>.  Northern argues this claim fails for several reasons.  First, Northern contends it is implausible that Northern "knowingly misrepresented" that gas from L.D. Drilling's wells was storage gas.  Second, it argues that Northern's statements to purchasers were truthful and were based on Northern's good-faith beliefs, with no factual allegations showing the statements were malicious.  Third, it argues the claim fails to adequately plead or to show special damages.  Finally, Northern argues that to the extent defendants rely on Northern's filing of the instant case (or the related state case) to support a slander of title claim, the allegation fails because Northern's communications in preparation or as part of such judicial proceedings are absolutely privileged under Kansas law.

In Kansas, slander of title is: "a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing injury to that person." *LaBarge v. City of Concordia*, 23 Kan.App.2d 8, Syl. ¶ 3, 927 P.2d 487 (1996), *rev. denied* 261 Kan. 1085 (1997).  Northern's first and second arguments – that defendants' allegation of

knowing misrepresentation is implausible and that Northern's statements were in fact truthful – fail on a motion to dismiss under Rule 12(b)(6) for the same reasons indicated above. The court must assume the truth of these well-pleaded counterclaim allegations for purposes of the instant motion. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-51 (2009) (the court determines if the complaint contains enough facts to state a claim to relief that is plausible on its face). As for the absence of an allegation of "special damages," defendants correctly point out that the Kansas Supreme Court has equated special damages with actual loss from the slander or defamation. *See Hall v. Kan. Farm Bureau*, 274 Kan. 263, 50 P.3d 495, 504 (2002); *7240 Shawnee Mission Holding, LLC v. Memon*, 2009 WL 3185344 (D. Kan., Sept., 30, 2009) (*citing Watkins v. Conway*, 124 Kan. 79, 257 P. 937, 939 (1929)). Defendants have alleged that they suffered actual loss from a slander of title. Finally, Northern may be correct that reliance upon communications that were part of judicial proceedings are privileged insofar as slander of title is concerned and cannot support a claim, but the complaint may be fairly read as alleging "widespread communications" to various gas purchasers and landowners outside of judicial proceedings. Of course, if the evidence fails to support such allegations, Northern can test the viability of the claim through a summary judgment motion. As of now, the motion to dismiss the claim on the pleadings is denied.

   4. <u>Inverse Condemnation</u>. Northern first contends LD's allegations fail to state a claim because the oil and gas lease interest owned by LD is considered personal property under Kansas law, not real property, and the ownership of real property is an essential element of inverse condemnation. Second, Northern argues the claim fails because it did not have the power to

condemn the strata underlying defendants' wells when it initiated the case.[3]

Under Kansas law, inverse condemnation proceedings are initiated by the party having a property interest and are available when private property has been taken for public use without the initiation of formal condemnation proceedings by the government. *See e.g., Frick v. City of Salina, Ks.*, ___ P.3d ___, 2010 WL 2696961, *6 (Kan., July 9, 2010) (citations omitted). To establish a claim for inverse condemnation, the party asserting it must show an interest in the real property and a taking. *Id.*

As Northern points out, when this claim was filed Northern had no governmental authority to take the defendants' property. *See* Doc. 242 at 21-22. Defendants have not explained how Northern's actions prior to certification of the area containing defendants' wells could plausibly be considered a governmental taking under a theory of inverse condemnation. And as noted above, after Northern obtained FERC's certification, Northern instituted condemnation proceedings in this court, thereby providing a process for defendants to obtain just compensation for any governmental taking. Under the circumstances, the court concludes that Northern's motion to dismiss the inverse condemnation counterclaim should be granted.

5. <u>Abuse of Process</u>. Northern contends the defendants have failed to provide factual allegations showing that Northern made an improper use of process, or that it had an ulterior motive, or that LD has suffered damage from the purported abuse. Northern also argues that no

---

[3] Although Northern did not have such authority when this action was filed or when the instant motion was briefed, it now has authority to proceed with condemnation. On June 2, 2010, FERC issued a Certificate of Public Convenience and Necessity authorizing Northern to expand the storage area by 12,320 acres, including the area underlying the LD wells at issue. On July 16, 2010, Northern filed an action for condemnation pursuant to the Natural Gas Act. *See Northern Natural Gas Co. v. Tract No. 1062710, et al.*, No. 10-1232-WEB-DWB (U.S. Dist. Ct., D. Kan.).

action lies where the lawsuit was instituted to obtain damages, as Northern did, and that allegations of an improper purpose are contrary to Magistrate Judge Bostwick's previous ruling in this case.

The elements of a claim for abuse of process are (1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. *See Merkel v. Keller*, 232 P.3d 887, 2010 WL 2670846 (Kan.App., June 25, 2010) (Table, Text in Westlaw) (*citing Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 647, 621 P.2d 411 (1980)). *See also Welch v. Shepherd*, 169 Kan. 363, 366, 219 P.2d 444 (1950) (the plaintiff must show "an act in the use of such process not proper in the regular prosecution of the proceeding.").

The court finds the LD defendants have failed to meet their burden under *Twombly* and *Iqbal* to set forth "sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face." As noted in Am.Jur. 2d, *Abuse of Process* § 11:

> Abuse of process contemplates some overt act done in addition to the initiating of the suit; thus, the mere filing or maintenance of a lawsuit, even for an improper purpose, is not a proper basis for an abuse of process action. Generally, therefore, no right of action exists for damages resulting from the institution and prosecution of a civil action *if the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint*, even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought suit upon an unfounded claim. However, if the suit is brought not to recover on the cause of action stated in the complaint, but to accomplish a purpose for which the process was not designed, there is an abuse of process.

[emphasis added] [footnotes omitted]. Moreover, "[b]ecause of its potential chilling effect on the right of access to the courts, the tort of abuse of process is disfavored, and must be narrowly

or strictly construed to insure the individual a fair opportunity to present his or her claim." *Id.*, §1.

Defendants have alleged an improper use of process in "the assertion of claims predicated on knowing falsehoods" – i.e. Northern's allegations and statements that L.D. Drilling's wells are producing storage gas belonging to Northern. They further allege that Northern's "prosecution of this litigation is motivated by a host of ulterior purposes," including financially injuring the defendants and preventing them from seeking new gas properties in the area. Doc. 301 at 10. Whatever ulterior motives Northern may have, it filed this complaint seeking, among other things, a determination of title to gas being produced in proximity to its storage field, damages for the alleged production of storage gas, a determination of nuisance for an alleged interference with operation of its storage field, and injunctive relief consistent with these claims. Defendants have failed to set forth allegations plausibly showing that Northern's alleged conduct in instituting and prosecuting this action amounts to an abuse of process. Defendants cannot overcome the hurdle of "showing a use of process not intended by law" simply by alleging that Northern's allegations are false. *Cf. Vanover v. Cook*, 260 F.3d 1182 (10th Cir. 2001) ("No liability accrues for abuse of process where the defendant institutes a lawsuit to obtain damages ..., even though the process is instituted with bad intentions or without probable cause."). Abuse of process is concerned with process employed "in a manner not contemplated by law, or to obtain an object which such process is not intended by law to effect." *See Tappen v. Ager*, 599 F.2d 376, 380 (10th Cir. 1979) (*citing Jackson & Scherer, Inc. v. Washburn*, 209 Kan. 321, 496 P.2d 1358, 1366 (1972)). *Cf. Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 621 P.2d 411 (1980) (defendant's post-judgment actions were conducted in accordance with Kansas statutes

and court rules and did not constitute abuse of process).  If a defendant "uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." *Tappen*, 599 F.2d at 380 (citation omitted).  The allegations of the defendants fail to state a claim for abuse of process; the motion to dismiss this counterclaim will therefore be granted.

6 & 7.  <u>Lost Production and Punitive Damages</u>.  Northern argues that Kansas law does not provide a legally cognizable claim for "lost production," although Northern concedes that a loss of production might be a basis for measurement of damages from some tortious act.  Similarly, Northern argues there is no separate cause of action for punitive damages under Kansas law, although a punitive damage award may be incidental to the recovery of actual damages on some identifiable claim.  Northern argues these allegations should be dismissed because, standing alone, they are not legally cognizable claims.

Northern may be technically correct that these allegations do not constitute independent claims, inasmuch as they are incidental to or dependent upon other claims.  But the issue appears to be one of form rather than substance, since Northern does not argue that defendants have failed to allege other claims for relief under which they can assert lost production damages and/or punitive damages.  Accordingly, with the understanding that these allegations seek damages related to and dependent upon other counterclaims, the motion to dismiss these claims will be denied.

B.  <u>Northern Motion to Dismiss Counterclaims of Overriding Royalty Interest Owners</u> (Docs. 266, 279, 281, 283, 292, 294) (Counterclaims of defendants David Munro;  Eric D. Stinson;  Eric D. Stinson, Trustee of the Eric D. Stinson Trust Dated 1/25/2007;  Robert Bayer;  Dale L. Smith and Mae D. Smith, Trustees of the Dale L. Smith and Mae D. Smith Revocable

Trust Dated 12/5/2007;  John P. Hastings).

Northern argues that under Kansas law, overriding royalty interests are considered personal property rather than interests in real property because they merely consist of a right to receive money.  As such, Northern says the counterclaimants who hold only overriding royalty interests do not have standing and cannot assert claims for trespass or  nuisance because such claims require a possessory interest in real property.[4]  Similarly, Northern argues the claims for unjust enrichment by these defendants should be dismissed, because those claims are based upon Northern's alleged benefit of using real property for gas storage, and these defendants do not have any right to use the property for gas storage and thus cannot be said to confer such a benefit on Northern.  Northern seeks dismissal of the claims pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

In response, the defendants concede that as overriding royalty interest owners, they are passive recipients of money who do not operate the wells in question, do not store gas, and do not participate in the production of gas.  But they contend this is "new territory," arguing that such interests are "inextricably linked" to the real property out of which the gas is produced. Doc. 313 at 4.  Defendants contend that if in fact Northern has been storing its gas on property to which VAL Energy holds a lease, then Northern has trespassed, created a nuisance damaging the land, and been unjustly enriched, thereby depriving defendants of benefits that accrue to them

---

[4] Northern's arguments herein about a lack of standing are only based on counterclaims that arise by virtue of ownership of overriding royalty interests.  To the extent various counterclaimants own working interests or other property interests, Northern's motions do not address such claims.  As such, to the extent the court grants the motions to dismiss for lack of standing, the ruling does not affect any counterclaims that arise by virtue of counterclaimants' ownership of interests other than overriding royalty interests. *See* Doc. 293 at 1, n.1;  Doc. 299 at 3, n.1; Doc. 311 at 1, n.1.

under contracts related to the land.  Defendants argue the court should deny the motion to dismiss on that basis.  If the court grants the motion, defendants ask leave to amend their counterclaims to assert claims for trespass to chattels and tortious interference with contract.

In *Campbell v. Nako Corp.*, 195 Kan. 66, 70, 402 P.2d 771 (1965), the Kansas Supreme Court characterized overriding royalty interests as follows:

> Typically, the term 'overriding royalty' is used to describe a royalty carved out of the working interest created by an oil and gas lease. Most frequently it is created subsequent to a lease by outright grant or by a reservation in the assignment of the operating rights. It is an interest in oil and gas produced at the surface, free of the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created. (See 3 Summers, Oil and Gas, perm. ed., § 554.) In Kansas any covenants in the instrument creating it are not covenants running with the land (*Nigh v. Haas*, 139 Kan. 307, 31 P.2d 28), and such interest is not an interest in land but is personal property. (*Connell v. Kanwa Oil, Inc*., 161 Kan. 649, 170 P.2d 631.)

As Northern points out, the defendants who own only overriding royalty interests do not allege any exclusive right to store gas in the subsurface strata and do not allege ownership of any interest in real property.  Given Kansas' characterization of such interests, the court must agree with Northern that the holder of an overriding royalty interest does not have standing to maintain damage claims for trespass to land or for nuisance, which typically involve invasions of or interference with ownership and/or possessory interests in real property.  *See Culwell v. Abbott Constr. Co., Inc.*, 211 Kan. 359, 506 P.2d 1191, 1994-96 (1973) ("nuisance does not exist apart from the interest of the landowner. * * * [P]laintiff cannot base his recovery on a theory of private nuisance since nowhere does it appear that he was injured in relation to a right which he enjoyed by reason of his ownership of an interest in land.").  *See also Stevensen v. Goodson*, 924

P.2d 339, 348 (Utah 1996) ("According to a majority of authorities, only possessors, owners, or occupiers of land may be impaired in their use and enjoyment of land and, therefore, recover for a nuisance."); *and* Am.Jur.2d Nuisances §243. For similar reasons, those counterclaimants who hold only an overriding royalty interest can state no claim for unjust enrichment in these circumstances, because the benefit of using the property for gas storage, which was allegedly conferred upon Northern, rightfully belongs to those persons with a possessory interest in the leasehold, not to the overriding royalty interest owners. Accordingly, the motion to dismiss the counterclaims of those defendants holding only overriding royalty interests will be granted. The court will grant the alternative request of these defendants to amend their counterclaims to assert claims for trespass to chattels and/or tortious interference with contract.

    C.  <u>Northern Motion to Dismiss Counterclaims of remaining defendants</u> (Doc. 298) (Counterclaims of Paul J. Beaver; Carl Dudrey; HJB, Inc.; Larry E. Keenan; Timothy R. Keenan; Bill R. Milton; Ivan W. Milton; Lisa M. Milton; Tammy L. Milton; Kim B. Shoemaker; Nancy H. Shoemaker; Vision Investments of Pratt, LLC; Whitetail Energy, Inc; Steven Eugene Young).

    Northern raises the same arguments discussed previously with respect to the remaining defendants. Accordingly, the court adopts the same rulings previously discussed with respect to these defendants.

    II.  **<u>Defendants' Motion for Summary Judgment</u>** (Doc. 331).

    Defendants Nash Oil and Gas, Val Energy, and L.D. Drilling, as well as all of the defendants identified by Northern in Doc. 168 as the Non-Operating Working Interest and Overriding Royalty Interest defendants, move for summary judgment on all of Northern's

claims. The defendants argue they are entitled to judgment by reason of collateral estoppel/issue preclusion, because a final judgment entered by Judge Schmisseur in related litigation in Pratt County District Court held that Northern does not have title to any injected storage gas that migrated to wells operated or owned by the defendants more than a mile from the FERC-certified boundaries of the Cunningham Field.[5] Additionally, the defendants argue that as a matter of federal-state comity, this court must follow the decision issued in the state court.

A. <u>Statement of Uncontroverted Facts</u>.

The following facts – which are taken primarily from defendants' motion – are uncontroverted for purposes of the motion for summary judgment. The exhibits referred to below are attached to defendants' memorandum (Doc. 332).

*Parties and claims*

1. Northern owns and operates an underground natural gas storage facility in Pratt and Kingman Counties, Kansas, known as the Cunningham Storage Field, pursuant to a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission ("FERC") and pursuant to a provisional permit issued by the Kansas Corporation Commission ("KCC"). (Doc. No. 168, ¶ 1–3).

2. Nash is a Kansas corporation based out of Pratt, Kansas, engaged in exploration and production of minerals, primarily in south-central Kansas. Nash is owned wholly by its principal, Jerry Nash, and his wife, and has a total of three employees and no permanent offices

---

[5] As noted below, Judge Schmisseur's initial summary judgment ruling was based on the certified boundaries of Cunningham Field prior to the June 2, 2010 order by FERC. The FERC order of June 2 authorized Northern to expand the Cunningham Field to an area that includes nearly all of the defendants' wells. Following the June 2nd order, Judge Schmisseur denied Northern's motion to vacate or modify his initial ruling.

or facilities. Mr. Nash manages the day-to-day operations of Nash. See Doc. No. 168, ¶¶ 8–9; Affidavit of Jerry Nash, attached hereto as Exhibit 2, at ¶ 2.

3. Val Energy is a Kansas corporation engaged in exploration and production of minerals in the state of Kansas. See Doc. No. 168, ¶¶ 6–7; Affidavit of K. Todd Allam, attached hereto as Exhibit 3, at ¶ 2.

4. L.D. Drilling is a Kansas corporation engaged in exploration and production of minerals in the State of Kansas. See Doc. No. 168, ¶ 4.

5. Northern has also named as defendants in this case the following persons or entities that Northern own non-operating working interests or overriding royalty interests in wells operated by L.D. Drilling and identified in this case:

• Carl Dudrey
• HJB, Inc.
• Kim B. Shoemaker
• L.D. Davis
• Larry Keenan
• Nancy H. Shoemaker
• Paul J. Beaver
• Timothy R. Keenan
• Vision Investments, LLC
• Whitetail Energy, Inc.
• Bill R. Milton,
• Ivan W. Milton
• Lisa M. Milton
• Steven Eugene Young
• Tammy Milton.

See Doc. No. 168, ¶¶ 79-80.

6. Northern has also named as defendants in this case the following persons or entities that own non-operating working interests or overriding royalty interests in wells operated by Val Energy and identified in this case:

• Allam Exploration, LLC
• Apollo Energies, Inc.
• Brenda M. Riffey
• Dale L. Smith and Mae D. Smith Revocable Trust Dated 12/5/2007
• Dale L. Smith, Trustee of the Dale L. Smith and Mae D. Smith Revocable Trust Dated 12/5/2007
• Mae D. Smith, Trustee of the Dale L. Smith and Mae D. Smith Revocable Trust Dated 12/5/2007
• High-Plains Eagle, LLC
• Larry D. Riffey
• Lies Exploration, LLC
• Vosburgh Exploration, LLC
• David Munro
• Eric D. Stinson Trust Dated January 25, 2007
• Eric D. Stinson, Trustee of the Eric D. Stinson Trust Dated January 25, 2007
• John P. Hastings
• Robert P. Bayer, II.

See Doc. No. 168, ¶¶ 82-83.

7. Northern has also named as defendants in this case the following persons or entities that own non-operating working interests or overriding royalty interests in wells operated by Nash and identified in this case:

• L.D. Davis
• Tri-K Ventures, Inc.

See Doc. No. 168, ¶ 85.

*The Cunningham Storage Field*

8. The Cunningham Storage Field is a facility used for the underground storage of natural gas located in Pratt and Kingman Counties in south-central Kansas. See Doc. No. 168, ¶¶ 2, 46.

9. As of March 16, 2007, the Cunningham Field was certificated to occupy a total of 26,240 acres, or 41 square miles, in portions of five townships in Pratt and Kingman Counties. See Northern Natural Gas Co., 127 FERC ¶ 61,038 (2009), attached hereto as Exhibit 4, ¶ 1 &

n.2. At that time, all of Sections 23, 24, 25, 26, 34, 35 and 36 as well as portions of Sections 27, 28, 32 and 33 and the South Half of Section 13 and the Southeast Quarter of Section 14 in Township 27 South, Range 11 West in Pratt County, Kansas were certificated as part of the Cunningham Field. The Cunningham Field also included all of Sections 16, 17, 19, 20, 21, 28, 29, 30 and 31, portions of Section 32, and all except the Northwest Quarter of Section 18 of Township 27 South, Range 11 West in Kingman County, Kansas. See id.

10. On March 16, 2007, Northern filed an application with FERC requesting expansion of the certificated boundaries of the Cunningham Field by 4,800 acres. See Northern Natural Gas Co., 125 FERC ¶ 61,127 (2008), attached hereto as Exhibit 5, ¶ 1). The requested expansion was to encompass all or portions of Sections 1, 2, 11, 12, 13 and 14 of Township 27, Range 11 West in Pratt County, Kansas. See Exhibit 4 hereto, ¶ 52 & n.40.

11. On October 30, 2008 FERC entered an order granting Northern's application in part and denying it in part. FERC granted Northern's request to expand the Cunningham Field by 1,780 acres. The expansion included the North Half of Section 13, the North Half and the Southwest Quarter of Section 14, the East Half of Section 15 and the Northwest Quarter of Section 22 of Township 27 South, Range 11 West, and the South Half of Section 7 and the Northwest Quarter of Section 18 of Township 27 South, Range 10 West. FERC denied Northern's application to further expand the Field the additional 3,040 acres requested by Northern. See Exhibit 4 hereto, ¶ 52 & n.40.

12. Northern has obtained leases as to all of Sections 11 and 12, the South Half of the North Half of Section 10, the South Half of Section 2, the South Half of the Southwest Quarter of Section 1, and the West Half of the Southeast Quarter of Section 1 of Township 27 South,

Range 11 West, as well as the North Half of Section 7 and the South Half plus the South Half of the Northeast Quarter of Section 6 of Township 27 South, Range 10 West. See Northern Leases, attached hereto as Exhibit 6.

*Defendants' wells*

13. Northern has identified the following wells in this lawsuit which are operated by defendant L.D. Drilling in Pratt County north of the Cunningham field:

• Mezger 1 – 1980' N, 1980' W of SE corner, S26, T26S, R11W, Pratt Co.
• Mezger 2 – 660' N, 660' W of SE corner, S26, T26S, R11W Pratt Co.
• Geesling 1 – 1395' S, 1320' W of NE corner, S26, T26S, R11W, Pratt Co.
• Young 1 – 2310' S, 1220' E of NW corner, S26, T26S, R11W, Pratt Co.
• Meireis 1-23 – 515' N, 860' W of SE corner, S23, T26S, R11W Pratt Co.
• Moore 1-27 – 1100' S, 330' W of NE corner, S27, T26S, R11W Pratt Co.
• Stanton 1 – 1980' N, 660' E of SW corner, S25, T26S, R11 W, Pratt Co.
• Zink A – 990' S, 1980' W of NE corner, S25, T26S, R11W, Pratt Co.
• Zink B – 660' N, 1050' E of SW corner, S24, T26S, R11W, Pratt Co.
• Martin 1 – 1320'S, 1320' E of NW corner of S36, T26S, R11W Pratt Co.
• Young 1-26 – 1650' N. 4290' W of SE corner, S26, T26S, R11W, Pratt Co.
• Trinkle 1-33 – 1240' S, 620' W of NE corner, S33, T26S, R11W Pratt Co.
• Zink 1 – 1320' S, 1320' E of NW corner, S25, T26S, R11W, Pratt Co.
• Milton 1 – 660' N, 1980' E of SW corner, S25, T26S, R11W, Pratt Co.
• Brown, Stanton L. 1 – 330' S, 990' E of NW corner, S35, T26S, R11W, Pratt Co.
• Gard 1 – 1650' N, 2310' E of SW corner, S28, T26S, R11W, Pratt Co.
• Ethie Koenemann 1 – 1980' S, 660' E of NW corner of S28, T26S, R11W, Pratt Co.
• Pruit 1-29 – 1320' S, 330' W, of NE corner S29, T26S, R11W, Pratt Co.
• Trinkle 1-28 – 330' N, 2310' W of SE corner, S28, T26S, R11W, Pratt Co.
• Joanne 1-20 – 660' N, 660' W of SE corner, S20, T26S, R11W, Pratt Co.
• Koenemann 2 – 990' South, 1650' East of NW corner of S28, T26S, R11W Pratt Co.

See Doc. No. 168, ¶ 77.

14. Northern has identified the following wells in this lawsuit which are operated by defendant Nash in Pratt County north of the Cunningham field:

• Holland 2-26 – 660' N, 3300' W of SE corner, S26, T26S, R11W, Pratt Co.
• CRC 2 – 660' S, 1980' E of NW corner, S1, T27S, R11W, Pratt Co.
• Staab 1 – 1370' N, 660' W of SE corner, S35, T26S, R11W, Pratt Co.
• Trinkle 1 – 1520' N, 1320' E of SW corner, S36, T26S, R11W, Pratt Co.

• CRC 1 – 660' S, 660' E of NW corner, S1, T27S, R11W, Pratt Co.
• J.C. 1 – 2310' N, 840' W of SE corner, S27, T26S, R11W, Pratt Co.
• Holland 1-26 – 660'N, 4620'W of SE corner, S26, T26S, R11W, Pratt Co.

See Doc. No. 168, ¶ 84.

15. Northern has identified the following wells in this lawsuit which are operated by

defendant Val Energy in Pratt and Reno Counties north of the Cunningham field:

• Riffey V 1-25 – 350' N, 2290' W of SE corner, S25, T26S, R11W, Pratt Co.
• Branscom 1 – 660' N, 560' E of SW corner, S30, T26S, R10W, Reno Co.
• McGuire 1-31 – 755' S, 532' E of NW corner, S31, T26S, R10 W, Reno Co.
• Kerchen Trust V 1-31 – 350' S, 2290' W of NE corner, S31, T26S, R10W, Reno Co.

See Doc. No. 168, ¶ 81.

As noted *infra*,  all of the foregoing wells except two are now within the boundary

approved by FERC as a result of the June 2, 2010 FERC order granting Northern's application to

expand the boundaries of the Cunningham Field.

16. The map attached hereto as Exhibit 7 accurately depicts the location of the Nash,

Val, and L.D. wells, the Disputed Areas containing Northern's leased areas, and the certificated

boundaries of the Cunningham storage facility prior to the FERC's June 2, 2010 order

authorizing expansion of the facility. See Nash Affidavit, Exhibit 2 hereto, ¶ 8.

*The Pratt County case*

17. On December 2, 2009, Northern filed a lawsuit in the District Court of Pratt County,

Kansas, December 2, 2009, Northern Natural Gas Co. v. ONEOK Field Services Co. LLC, Case

No. 2009 CV 111.  In that Pratt County case Northern alleged that it had the right and title to all

gas produced at the Nash, Val, and L.D. wells, as a matter of Kansas law. See Petition, attached

hereto as Exhibit 8, ¶ 31).

18. In the Pratt County case, Northern asserted claims for conversion against ONEOK

21

and Lumen. See Exhibit 8 hereto, ¶¶ 42-49.

19. Nash and L.D. sell or have sold gas produced at their wells identified in this lawsuit to ONEOK Companies. Val and L.D. sell or have sold gas produced at their wells identified in this lawsuit to Lumen. See Nash Affidavit, Exhibit 2 hereto, ¶ 8; ONEOK Answer and Third-Party Petition, attached hereto as Exhibit 9, ¶ 6; Lumen Answer and Third-Party Petition, attached hereto as Exhibit 10, ¶¶ 34, 37.

20. In the Pratt County case ONEOK filed an Answer to Northern's Petition and a Third-Party Petition against Nash and L.D., claiming that to the extent ONEOK is liable to Northern in that case, Nash and L.D. Drilling must indemnify and hold ONEOK harmless as to any such liability; Lumen likewise filed an Answer to Northern's Petition and a Third-Party Petition against L.D., claiming that to the extent Lumen is liable to Northern in that case, L.D. must indemnify and hold Lumen harmless as to any such liability. See Exhibit 9 hereto, ¶¶ 9–12; Exhibit 10 hereto at 6-7. As a result of threats of suit by Northern, which culminated in Northern's filing of the Pratt County case, ONEOK and Lumen placed all of the payments for production at the Nash, Val, and L.D. wells in suspense beginning in about October 2009. See Exhibit 2 hereto, ¶ 5; Exhibit 3 hereto, ¶ 6.

21. Nash and L.D. filed for summary judgment in the Pratt County Case; they argued that their wells were too far away from the Cunningham Field to be considered on "adjoining property," that consequently the rule of capture and not K.S.A. 55-1210 applied to determine title
as between them and Northern, and that under the rule of capture, Nash and L.D. Drilling had legal right and title to the gas they produced, and Northern had no claim to title to such gas. See

22

Exhibit 1 hereto at 2.

22. On April 15, 2010, Pratt County District Judge Robert J. Schmisseur granted Nash

and L.D. Drilling's motion for summary judgment in its entirety, holding the following:

> For the reasons stated above, the court concludes that none of the Nash and L.D.
> wells are located on property "adjoining" Northern's Cunningham Storage Field.
> The court also concludes that Nash and L.D.'s interpretation of K.S.A. 55-1210 is
> correct, and that K.S.A. 55-1210(c)(1) protects a storage field operator's title to
> previously injected storage gas that migrates horizontally, beyond the boundaries of
> the storage field, only if that gas migrates to "adjoining property," and not if it
> migrates further, to property that is too far from the storage field to qualify as
> "adjoining property." The Court accordingly rules that the summary judgment
> motions of Nash and L.D. are granted in full as to all the gas purchased by ONEOK
> and/or Lumen from any of the Nash or L.D. wells identified by Northern in this case.

See Exhibit 1 hereto at 31. Moreover, Judge Schmisseur explicitly rejected Northern's argument

that claim that Nash and L.D. by their drilling and production activities miles from the

certificated boundaries of the Cunningham Field had unlawfully engaged in "interference" with

Northern's storage field. See id. at 30-31. Judge Schmisseur also certified his decision as a final

judgment under K.S.A. 60-254(b) so that it could be immediately appealed and a "definitive

appellate resolution of these legal issues may be had as soon as possible. See Exhibit 1 hereto at

3, 31-32.

23. Northern filed a Notice of Appeal of the same day Judge Schmisseur issued his

decision. See Northern Notice of Appeal, attached as Exhibit 11 hereto.

24. Northern also filed a motion to transfer the appeal from Judge Schmisseur's decision

to the Kansas Supreme Court. See Northern Motion to Transfer, attached as Exhibit 12 hereto.

*Summary of the Pratt County Proceedings and Judge Schmisseur's Decision*

25.  In the Pratt County case, Northern sued ONEOK and Lumen for conversion of gas

produced by Nash, Val, and L.D. and sold to ONEOK and Lumen. Northern claimed that the gas

produced from the Nash, Val, and L.D. wells in question and sold to ONEOK and Lumen was storage gas that had migrated from the Cunningham Field to the miles-distant wells and that Northern retained title to the allegedly migratory storage gas pursuant to Northern's interpretation of K.S.A. 55-1210. Northern further claimed that as to such allegedly migratory storage gas, the common law rule of capture had been abolished by K.S.A. 55-1210, regardless of where or how far the gas migrated.

Subsequently, ONEOK and Lumen asserted third-party claims against Nash and L.D. based on contractual indemnification obligations in the parties gas purchase agreements. Nash and L.D. in turn asserted that K.S.A. 55-1210 only abrogated the rule of capture as to gas that migrated vertically, or migrated horizontally to "adjoining property," but did not did not abolish the rule of capture as to any storage gas that migrated further, to property too far from the storage

field to qualify as "adjoining." Nash and L.D. therefore filed for summary judgment soon after they were brought into the lawsuit via ONEOK's and Lumen's third-party claims.

After briefing and a hearing, Judge Schmisseur determined that the 34-paragraph factual statement submitted by Nash and L.D. Drilling was uncontroverted.  Based on these uncontroverted facts, Judge Schmisseur granted the motions for summary judgment in their entirety.  In summary, Judge Schmisseur made the following findings:

(1) The wells at issue in the Pratt County case (the same wells at issue in the present case) are located on property too far from the Cunningham Field to qualify as "adjoining property" as the term is used in K.S.A. 55-1210(c), see Exhibit 1 hereto at 15–18;

(2) Nash and L.D. Drilling properly interpreted the scope of K.S.A. 55-1210, to wit,

although K.S.A. 55-1210 protects title to allegedly migrated storage gas or provides an injector a claim to title to gas that has allegedly migrated outside the boundaries of the injector's storage field, the statute does not protect title to gas that has allegedly migrated to property more distant than "adjoining property," see Exhibit 1 hereto at 18–21;

(3) Limitation of K.S.A. 55-1210's protection of title to previously injected storage gas only to gas that has migrated to "adjoining property" and not beyond is consistent with the development of the law in the area and with the legislative history for K.S.A. 55-1210, see Exhibit 1 hereto at 21–25);

(4) The case law cited by Northern as supporting its argument that K.S.A. 55-1210 revoked the common law rule of capture as to gas alleged to be previously injected, no matter where and how far it migrates, was not applicable and does not require that the statute be interpreted as Northern proposed, see Exhibit 1 hereto at 25–30; and

(5) Northern's claim based on "interference" or on K.S.A. 55-1210(b) was without merit as a matter of law, see Exhibit 1 hereto at 30–31.

Based on these holdings, the State Court granted Nash and L.D.'s motions for summary judgment; it concluded that the title to gas produced at the wells in question was determined under the rule of capture, that under that common law rule, Nash and L.D. Drilling had full legal right to produce gas from beneath their leases, and hence had full legal right and title to the gas produced from their wells.

Northern – Additional Undisputed Facts.  (Exhibits referred to are attached to Doc. 349).

1. During a hearing on June 30, 2010,  Judge Schmisseur declared that his decision to grant summary judgment to Nash and L. D. Drilling "…is of no precedential value at this point

in time in this state…." See Exhibit A at 95:19-21 (emphasis added).

2. As a result of FERC's June 2, 2010 Order, all but two of Defendants' wells are currently located within the area that FERC has authorized Northern to include in the Cunningham Storage Field, or within one mile of such area. See Exhibit B; Northern's First Amended/Supplemental Petition (Docket No. 168) at ¶¶ 77, 81, and 84; and Exhibits D and D-1. Northern has instituted a condemnation action to acquire the area in question.[6]

3. The current location of Defendants' wells, in relation to the certificated boundaries of the Cunningham Storage Field and the new area authorized by FERC, is found in Exhibit D hereto.

4. The Kansas Supreme Court granted Northern's Motion to Transfer so Northern's appeal will now receive direct review from the Kansas Supreme Court. See Exhibit F.

B. Summary of Arguments.

Defendants argue that under the doctrine of collateral estoppel, "Judge Schmisseur's summary judgment decision is final and preclusive as to a number of issues that are necessary and fundamental to Northern's claims in this case...." Doc. 332 at 15. Defendants maintain that regardless of whether this court thinks the state case was rightly decided, this court is bound to apply the state court's determination of the issues noted above. Defendants further argue that neither the pendency of an appeal nor the absence of some of the current defendants from the

_____

[6] Defendants object to any suggestion by Northern that FERC's order "instantaneously gives Northern ownership of defendants' properties," or that it "has put the defendants' wells within the boundaries of Northern's storage field." Doc. 353 at 16. Defendants assert that the issuance of the Certificate by FERC does not automatically vest any title or interest in Northern, but only authorizes Northern to obtain the necessary property rights through the eminent domain provisions of the Natural Gas Act.

state action are grounds to avoid collateral estoppel.  Defendants address each of the claims

asserted by Northern and argue the state court judgment precludes an essential element of each

claim.  In the alternative, defendants argue that Judge Schmisseur's ruling was a correct

interpretation of Kansas law and should be followed for that reason.  They argue K.S.A. § 55-

1210 only protects an injector's title to storage gas to the point of property adjoining the storage

field, but no farther.  Additionally, they contend Judge Schmisseur's rejection of Northern's

"interference claim" under K.S.A. § 55-1201(b) and the fact that the defendants operate their

wells with the permission of the KCC – which they contend has exclusive authority to regulate

the production of gas with respect to correlative rights – means that Northern's claims for

nuisance, unjust enrichment and conspiracy are necessarily precluded.  Lastly, defendants argue

that FERC's June 2 Order authorizing Northern to expand the Cunningham Field has not brought

defendants' wells within the boundaries of the field, because the FERC Certificate merely

authorizes Northern to acquire the property under the eminent domain procedures of the Natural

Gas Act.  FERC "did not and could not grant title to defendants' properties before [Northern]

buys or condemns them...."  Defendants say such acquisition will not occur unless and until

Northern pays the condemnation award at the end of the eminent domain proceedings.

In response, Northern first argues that the state court judgment has no preclusive effect

because Judge Schmisseur expressly stated that "my decision is of no precedential value at this

point in time in this state, but if an appellate court takes a look at it, it might be."  Next, Northern

contends Judge Schmisseur "impliedly recognized" the viability of Northern's conversion claims

with respect to gas production after the June 2, 2010, when he stated that "under the FERC order

of June 2nd, [defendants] may be producing your [Northern's] gas," even though he declined to

alter his initial ruling because he found Northern would not suffer any harm from this potential "foul" as long as payments from gas purchasers were suspended. Additionally, Northern argues that the Kansas case law of collateral estoppel only *generally* considers a judgment to be final on appeal, but on occasion the courts have found judgments to be "not so sufficiently firm" to warrant preclusive effect, and it contends the "ambiguous record" in the state court warrants such treatment here. *Citing Keiswetter v. Sanjuro*, 1989 WL 18787 (D. Kan., Feb. 13, 1989). Next, Northern contends the state court judgment is conflict with the Kansas Supreme Court's ruling in *Union Gas System, Inc. v. Carnahan*, 245 Kan. 80, 774 P.2d 962 (1989), and should not be given preclusive effect for that reason as well.

Northern also argues that the June 2 FERC order means defendants' wells are now within the certificated boundaries of the Cunningham Storage Field or (with two exceptions) within the 1-square mile adjoining sections. It argues the defendants are bound by FERC's ruling, including its finding that the defendants' wells are drawing Northern's storage gas away from the Cunningham Storage Field and compromising the integrity of the field. Northern also maintains that even if the state court judgment is given preclusive effect, Northern still has a viable claims for nuisance, conspiracy and unjust enrichment based on defendant's "unauthorized interference" with Northern's storage gas and operations, regardless of who has title to the migrating gas.

Northern says the defendants' alternative argument for following the state court ruling is unavailing because the ruling was based on three fundamental errors: it erroneously construed K.S.A. § 55-1210 contrary to the statutory language and case law; it results in an unconstitutional taking of Northern's property; and the judge failed to apply correct summary

28

judgment standards.  Additionally, Northern contends the judge erred by refusing to grant relief

for material changes wrought by the June FERC order, which,  according to Northern, make the

factual basis of Judge Schmisseur's ruling inaccurate and invalid.   Finally, Northern argues that

Judge Schmisseur's construction of the statute operates to deprive Northern of property without

due process or just compensation, in violation of the Kansas Constitution and the Fifth and

Fourteenth Amendments to the U.S. Constitution, and that the order conflicts with and is

preempted by the federal Natural Gas Act.

      C.  <u>Discussion</u>.

Under the Full Faith and Credit Act (28 U.S.C. § 1738), the federal courts must give the

judicial proceedings of any state court the same preclusive effect that those judgments would be

given by the courts of that state.  *Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir. 1993).

Kansas courts regularly apply the doctrine of collateral estoppel – or "issue preclusion" –

in determining the preclusive effect of a prior judgment.  The doctrine "prevents a second

litigation of the same issues between the same parties or those in privity with the parties." *Reed

v. McKune*, 298 F.3d 946, 950 (10th Cir. 2002).  "Under Kansas law, the requirements of

collateral estoppel are:  (1) a prior judgment on the merits which determined the rights and

liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and

judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have

been determined and necessary to support the judgment." *Id*. (*quoting Kan. Pub. Employees Ret.

Sys. v. Reimer & Koger Assocs.*, 262 Kan. 635, 941 P.2d 1321, 1344 (1997)).

Judge Schmisseur held that under K.S.A. § 55-1210(c)(1), Northern no longer had title to

injected storage gas that migrated to the defendants' wells because the wells were not on

property adjoining the storage field. As a result, he found, defendants' production of such gas and subsequent sales of the gas could not constitute conversion of Northern's property. Northern's claims for conversion in the instant case allege that Northern has title to storage gas that has migrated or is migrating from the storage field to the defendants' wells.[7] Such claims require proof of the same issue – title to storage gas that migrated to defendant's wells – that was determined adversely – at least in part – to Northern as part of the prior judgment. The court notes, however, that the hearing transcript of June 30, 2010, wherein Northern asked Judge Schmisseur to modify his ruling in light of FERC's June 2nd order, makes clear that the judge limited his ruling to events occurring *before* the issuance of the FERC order. The situation after June 2, 2010 was "a different animal," he said, under which the defendants "may be producing [Northern's] gas." He certified his ruling for immediate appeal so that as to issues "prior to June 2nd, [the] Kansas Supreme Court can tell me if I'm right or not."

The elements of collateral estoppel are thus established, but only insofar as Northern's conversion claims arising prior to June 2, 2010 are concerned. There is a prior judgment on the merits that determined the rights of Northern and the defendants on the issue of title to migrated storage gas up to the date of the June 2 FERC order. The issue was actually litigated and was necessary to support the judgment, and it involved the same parties or parties in privity with them. Collateral estoppel principles preclude relitigation of the same issue in this action.[8]

---

[7] Counts II, III and IV of the Amended Complaint, Doc. 168, allege that Northern has not lost title to its previously injected storage gas that has migrated from its field to the defendants' wells, that the defendants have produced or will produce such gas, and that production or sale of such Northern storage gas constitutes conversion.

[8] A recognized exception to collateral estoppel exists when a new determination is warranted in order to take account of a change in the applicable legal context or otherwise avoid

This conclusion is not altered by the judge's declaration that his ruling would have "no precedential effect" unless it were upheld by an appellate court. "Precedent" refers to a ruling by a higher court that lower courts are bound to apply when deciding disputes involving different parties. Unless and until a Kansas appellate court adopts Judge Schmisseur's holding, his decision does not bind other trial courts deciding unrelated disputes under K.S.A. § 55-1210. But precedential effect is distinguishable from collateral estoppel, which prevents relitigation of the same issue by the same parties once a matter has been reduced to judgment. The judge's comment does not preclude application of collateral estoppel. As for the fact that an appeal is currently pending in the state case, the general rule is that a final judgment for purposes of collateral estoppel is "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." 46 Am.Jur.2d Judgments, §522. A decision is ordinarily regarded as final if the parties were fully heard on an issue, the court supported its decision with a reasoned opinion, and the decision was subject to appeal (or was in fact appealed). *See Restatement (Second) of Judgments* §13, comment. g. All of these factors weigh in favor of applying collateral estoppel in the instant case.

Nor is the court persuaded by Northern's argument that the state judgment can be disregarded on the grounds that it was erroneous. That is not to say the court agrees with Judge Schmisseur's interpretation of Section 55-1210. The statute declares in subsection (a) that "[a]ll natural gas which has previously been reduced to possession, and which is subsequently injected

---

inequitable administration of the laws. *See Restatement (Second) of Judgments* § 28(2)(b). Because Judge Schmisseur limited his ruling to events occurring before the FERC June 2 order, the issuance of the June 2 order by FERC cannot be grounds for invoking the foregoing exception.

into underground storage fields, ... shall at all times be the property of the injector...."

Subsection (c) provides that "[w]ith regard to natural gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned ... or otherwise purchased: (1) the injector ... shall not lose title to or possession of such gas if such injector can prove ... that such gas was originally injected into the underground storage."  K.S.A. §55-1210(c).  Despite the seemingly absolute title granted by subsection (a), Judge Schmisseur concluded that the reference to "adjoining property" in subsection (c) was a limitation that effectively cuts off the injector's title if the storage gas migrates beyond the adjoining property, which the Kansas Supreme Court defined in a prior case to mean a one-mile section next to a section containing the storage field.  While it is possible to construe the language this way, nowhere does the statute say that the injector's ownership interest of identifiable storage gas is terminated in such circumstances, and the court questions whether a forfeiture of title should be implied from statutory silence or from what amounts to a negative inference – i.e., inferring a loss of title from a statement that the injector *retains* title when storage gas migrates "to adjoining property or to a stratum, or portion thereof, which has not been condemned...."[9]  This is particularly troubling

_____

[9] Judge Schmisseur said subsection (c)(1) would be "wholly superfluous" if subsection (a) provided an injector with title to migrating storage gas.  But subsection (c)(1) can reasonably be read as simply confirming or illustrating that the title granted by (a) remains in the injector when gas migrates out of the storage field.  Such an illustration does not render subsection (c) – which also establishes a preponderance of evidence standard for proving ownership of migrating gas – wholly superfluous.

The judge also discussed at length how Northern's interpretation would allow it to effectively occupy and use the defendants' leases for storage without paying, meaning producers would be "dragooned into service as involuntary, unpaid insurers" in violation of the U.S. Constitution.  But subsection (c)(3) clearly provides that the owner of the stratum shall be entitled to such compensation for the use of or damage to the stratum as is allowed by law.  Thus, an injector whose gas migrates to a stratum it does not own may be liable in trespass or unjust enrichment for any use of, or damage to, the stratum.  *See e.g., Beck v. Northern Natural*

when the statute unambiguously declares that injected storage gas "shall at all times" be the property of the injector, and the apparent purpose of the law was to supplant the rule of capture by establishing an injector's property rights in injected storage gas.  *Cf. Northern Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 632 (2008) ("the Kansas legislature abolished the rule of capture with respect to migrated gas without limit to where the gas migrates.").  *See also Union Gas*, supra, 245 Kan. at 88 ("as soon as Union's storage operation became authorized and its gas identifiable, the gas was no longer *ferae naturae* and subject to the rule of capture.").  In

---

*Gas Co.*, 170 F.3d 1018 (10th Cir. 1999) (injector whose gas migrated to unleased stratum was liable to landowners for fair rental value of the formation).

  Judge Schmisseur also noted the Oklahoma statute – upon which the Kansas statute was based – did not contain the phrase "adjoining property."  He concluded that the term was added to the Kansas law for "an obvious reason: to limit the storage field operator's possible retention of title to gas that migrates to 'adjoining property' but not beyond."  But subsection (c) actually applies to gas that has migrated "to adjoining property or *to a stratum, or portion thereof*, which has not been condemned..." [emphasis added].  The italicized portion, which was apparently taken from the Oklahoma statute, leaves the Kansas statute subject to several possible interpretations.  But the most reasonable construction of the language and punctuation chosen by the legislature is that subsection (c)(1) is not limited only to "adjoining property," but applies as well if storage gas migrates to any stratum, or a portion of a stratum, that has not been condemned or purchased.  *Cf. Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1327, 136 P.3d 428 (2006) ("Subsection (c) applies when stored gas has migrated to property not controlled by the gas injector.").  Incidentally, the corollary to retaining ownership of migrating storage gas, as shown by *Hayes*, is that an injector remains subject to liability for damage caused by migrating storage gas.  *See id.*, 281 Kan. at 1330  (Injector liable for damage when storage gas migrated 8 miles to downtown Hutchinson; attorney's fees were properly awarded under 55-1210(c)(3)).  Judge Schmisseur found the *Hayes* ruling on attorney's fees to be "completely inapposite to the gas title issue in this case" and said nothing in it undermined his interpretation of K.S.A. § 55-1210.  But under his interpretation, the introductory clause of subsection (c) limits application of all of its provisions – including subsection (c)(3)'s right to attorney's fees – to instances of migration to adjoining property and not beyond.  The migration in *Hayes* was clearly beyond the property adjoining the storage field.  The court also notes that subsection (b), which Judge Schmisseur suggested applies only to vertical gas migration underlying a storage field, actually states that "in no event shall such [injected] gas be subject to the right of the owner of the surface of such lands or of any mineral interest therein, under which such gas storage fields lie, *or of any person, other than the injector*, ... to produce, take, reduce to possession, either by means of the law of capture or otherwise...."

the court's view, any ambiguity in subsection (c) should be construed against an implied forfeiture of the property rights that are expressly and plainly declared in the statute. *Cf. United States v. Vonn*, 535 U.S. 55, 65 (2002) (the canon *expressio unius est exclusio alterius* has force only when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned *were excluded by deliberate choice, not inadvertence.*) [emphasis added]. Doing so is more consistent with the statutory language, it furthers the declared public policy of promoting underground storage reserves, and it avoids constitutional difficulties from construing the statute to work a forfeiture of property rights. Having said that – and despite the court's obvious concerns – the fact that the court disagrees with the reasoning underlying the judgment is not a valid reason for avoiding the bar of collateral estoppel, which is designed to avoid the expense and vexation of multiple lawsuits on the same issue. *Cf. Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 58 P.2d 1284 (2002) (collateral attack on judgment may be permitted where it is clear that the court had no jurisdiction or that it acted contrary to due process). Northern may pursue its arguments about statutory construction – as well as arguments about preemption or the constitutionality of the state judgment – in the appeal now pending before the Kansas Supreme Court. These arguments, however, are not a basis for re-litigating the same claim in this forum when the parties had an adequate opportunity to litigate the issue in state court and the state court has already issued a final judgment determining the issue. Under 28 U.S.C. § 1738, this court is bound to give effect to the judgment finding that Northern did not have title to gas produced by the defendants prior to June 2, 2010.

Judge Schmisseur's ruling only determined the question of who had title to migrated storage gas prior to June 2, 2010. The judge refrained from determining whether Northern's

receipt of the June 2 FERC certification altered the parties' legal rights to any migrated storage gas under K.S.A. § 55-1210 and/or *Union Gas System, Inc. v. Carnahan*, 245 Kan. 80 (1989).[10] Thus, the state judgment clearly does not bar Northern's conversion claim with respect to any of the defendants' actions after June 2, 2010.  Moreover, the court concludes that the judgment does not preclude Northern's claims for nuisance, unjust enrichment, or civil conspiracy.  The court notes that Northern's petition in the State action asserted only one claim – conversion.  Northern did not assert – and the state district court did not adjudicate – any other tort claims.  Nor does the judge's finding that Northern lost title to migrating gas (before June 2, 2010) necessarily preclude such claims.  Northern claims the defendants have unreasonably interfered with Northern's use and enjoyment of its storage facility and have unjustly obtained a benefit by intentionally drawing storage gas out of Northern's field, in part by lowering pressures through the use of extraordinarily large pumping units.  Although the question of who had legal title to migrating storage gas could be relevant to such claims, the claims do not contain an essential element that would require Northern to prove that it retained legal title to any storage gas that migrated to the defendants' property.  *See e.g., Smith v. Kansas Gas Service Co.,* 285 Kan. 33, 169 P.3d 1052 (2007) (a nuisance may include any use of property by one which obstructs the reasonable and comfortable use and enjoyment of property by another); *State of Kansas v. Wright*, 199 P.3d 188, 2009 WL 205224 (Kan.App., Jan. 23, 2009) (Table, text in Westlaw) ("for issue preclusion to apply, ... the previously resolved issue must be identical to the one presented

---

[10] *See id.*, 245 Kan. at 88  ("The law abhors a forfeiture.  So, as soon as Union's storage operation became authorized and its gas identifiable, the gas was no longer ferae naturae and subject to the rule of capture. The title to Union's captured gas remained in Union. Thus, Union did not forfeit its natural gas produced after January 13, 1986, even though it acquired no title to the DeTars' property until the date of taking, April 9, 1987.").

in the current litigation; similarity between the issues is insufficient.").  The issue of whether Kansas would recognize a claim of nuisance, unjust enrichment or conspiracy in these circumstances was not presented in the state court pleadings and was not essential to the judgment entered.

Judge Schmisseur's opinion did reject an argument by Northern which it characterized as an "interference conversion claim," in which it apparently argued that the defendants could be liable under K.S.A. § 55-1210(b) for interference with operation of the storage field.  Noting that the KCC had jurisdiction to regulate production with respect to correlative rights, the judge's opinion stated that "whether [defendants'] drilling and production activities impact the rights of other mineral rights holders, including Northern, is a matter for the KCC under its regulatory jurisdiction."[11]  He further rejected any such claim because "[s]aid activities miles away from a gas storage field are not 'interference,'" and because, he said, the defendants' production activities "did not cause the initial breach of the storage field."  After reviewing the record, the court concludes that this finding does not preclude Northern's claims in this action for nuisance, unjust enrichment, or civil conspiracy.  Defendants cite nothing from the record to show that Northern actually pled an interference claim in the state action or to show what the scope of any such claim was.  The record suggests that the parties had no opportunity for discovery on any such claim.  Nor it is clear that the above findings by the judge were essential to the judgment

---

[11] The court sees nothing in the current record to suggest that the parties had a fair opportunity to litigate this issue in the state proceeding.  While the KCC clearly has jurisdiction to regulate the production of natural gas from a common source of supply (*see e.g.*, K.S.A. § 55-703) – including the power to prevent drainage and/or the inequitable or unfair taking of natural gas from a common source of supply – the state record apparently contains no briefing or discussion of the extent of KCC's "common source" jurisdiction and its application to gas from a FERC-certified storage field.

entered against Northern on its conversion claim. In sum, the court rejects defendants' argument that the collateral estoppel effect of the state court judgment bars Northern's remaining tort claims. Defendants' motion for summary judgment will be granted with respect to Northern's claim of conversion arising before June 2, 2010, but denied as to all other claims.

**III.  Proposed Stay of Case**.

Judge Schmisseur's certification of the state judgment has allowed a central issue in this case to proceed to the Kansas Supreme Court, which will have the final say on interpretation of K.S.A. § 55-1210.  The Supreme Court's ruling could impact any future determination of the remaining issues in this action (and possibly other actions) and has the potential to nullify much of what would be decided in this action.  As noted in *Restatement (Second) of Judgments* § 16, in these circumstances the reversal of an earlier judgment may be grounds to set aside a later judgment.  The Restatement notes that "it may ... be advisable for the court that is being asked to apply the judgment as res judicata to stay its own proceedings to wait the ultimate disposition of the judgment ... on appeal.  This course recommends itself if the disposition will not be long delayed and especially if there is substantial doubt whether the judgment will be upheld." *Restatement (Second) of Judgments* §16, comment. b.  Under the circumstances, the court believes that a stay of this action for a reasonable period of time to allow the Kansas Supreme Court to rule on the appeal now pending before it may be the most efficient way of handling the remaining issues in this action.  The court will hear from the parties at the preliminary injunction hearing now scheduled for October 6, 2010, as to whether they believe a stay would be an appropriate course of action to take.

IV. **Conclusion**.

Plaintiff Northern's Motions to Dismiss Counterclaims (Docs. 241, 266, 279, 281, 283, 292, 294, and 298) are GRANTED IN PART and DENIED IN PART: The motions to dismiss are GRANTED with respect to the following counterclaims: Intentional Infliction of Emotional Distress/Outrage; Inverse Condemnation; Abuse of Process; and trespass, nuisance and unjust enrichment to the extent they are based solely on ownership of overriding royalty interests. The defendants are granted 30 days' leave to amend for the purpose of asserting counterclaims for trespass to chattels and/or tortious interference with contract. Northern's motions to dismiss are DENIED with respect to the following counterclaims: Tortious Interference with Contract or Business Expectation; Slander of Title; Lost Production damages and Punitive damages.

The defendants' Motion for Summary Judgment (331) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Northern's claim of conversion prior to June 2, 2010 is concerned. The motion is DENIED with respect to the remainder of Northern's claims.

The court will hear arguments from the parties at the October 6, 2010 hearing as to whether this action should be stayed for a reasonable period pending a ruling by the Kansas Supreme Court in the related state litigation (*Northern Natural Gas Company v. ONEOK Field Services Company, LLC, et al*, Ks. Sup. Ct. No. 10-104279-AS).

IT IS SO ORDERED this __29th__ Day of September, 2010, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge