# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 08-1405-WEB-DWB |
| | ) | *Consolidated with* Case |
| L.D. DRILLING, INC.; VAL ENERGY, INC.; and NASH OIL & GAS, INC., et.al., | ) ) ) | No. 08-1400-WEB-DWB |
| Defendants. | ) ) | |
| _____ | ) | |
| NORTHERN NATURAL GAS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Approximately 9117.53 acres in Pratt, Kingman, and Reno Counties, Kansas, and as further described herein; | ) ) ) ) | |
| Tract No. 1062710 containing 80.00 acres more or less, located in Kingman, County, Kansas, and as further described herein; et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER**

By Memorandum and Order filed December 22, 2010 in Case No. 08-1405, Judge Brown granted Plaintiff Northern's Motion for a Preliminary Injunction. (Doc. 420.) In that Order, the Court directed the parties in that case to confer about a procedure to accomplish the shut-in of the subject wells and, if they were unable to agree, to submit proposed orders setting out the procedure to be used to shut-in the wells. (Doc. 420, at 38.) The Court also determined that the two earlier consolidated cases, Case No's 08-1405 and 08-1400, and the more recent condemnation action, Case No. 10-1232, involve common questions of fact and should be consolidated for discovery only in order to reduce unnecessary costs and duplication of effort. (Doc. 420, at 39.)[1]

The Court then filed a Notice of Injunction in Case No. 10-1232, advising parties in that case of the preliminary injunction and procedure for proposed testing. (Doc. No's 167, 172.) The Court noted that any testing of the wells that is relevant to the condemnation action should be accomplished forthwith. (Doc. 167, at 2.)

The parties in Case No. 08-1405 were unable to agree concerning procedures for shutting in and testing the subject wells, and Northern, Val and L.D. Davis filed

---

[1] Interlocutory appeals of the preliminary injunction have been filed by L.D. Davis and Nash (Doc. No's 430, 432), and those appeals have been docketed in the Tenth Circuit. (Doc. No's 435, 436.)

their proposed orders concerning testing. (Doc. No's 421, 422, 423 & 424.) [2]

Northern also filed a Motion to Resolve Parties' Disputes concerning the issue of testing and shut in of the wells. (Doc. 425.) Defendant L.D. Davis filed a response to that motion and opposes any further testing by Northern. (Doc. 427.) It appears that Nash joins in that position. (Doc. 425-4, at 2.) Northern has advised the undersigned magistrate judge that it does not intend to file a reply concerning the motion.

By Memorandum and Order filed January 19, 2011 (Doc. 429), Judge Brown entered an Order concerning Northern's motion as follows:

> Any request by a non-owner to test one or more of defendants' wells shall be made by motion and shall be referred to Magistrate Judge Donald Bostwick for determination. (In that connection, Northern's "Motion to Resolve Parties' Dispute" (Doc. 425) is hereby referred to Judge Bostwick.). The Magistrate may set a deadline for filing any such motions and for completion of any testing approved by him, in addition to determining all other issues related to testing. Such orders may be issued both in the instant action and in the condemnation proceeding (Case No. 10-1232).
>
> Any of the defendant operators who elect to remove equipment from their wells or to treat their wells

---

[2] LD Davis advised Northern that it had decided not to remove the rods and tubing from its wells as part of the shut in procedure. (Doc. 422, at 2 ¶ 2.) Nash advised Northern that its wells had already been shut in and there is no need to perform any additional work on those wells. Nash, like L.D. Davis, stated that it would not remove equipment from the well bores. (Doc. 425-3, at 2.)

3

> for corrosion shall, if they intend to seek reimbursement from Northern, provide Northern with notice of their election. The defendants may select an independent contractor to perform such preventive work at a reasonable cost and shall be responsible for initial payment of the contractor. If the defendants elect to use their own employees to perform any such work, they may seek reimbursement from Northern for the fair market value of such work. The defendants may thereupon submit receipts to Northern for reimbursement for such work up to a limit of $2500 per well, which shall be paid by Northern within 30 days of submission. If the cost of reasonable preventive work exceeds $2500, a defendant may petition the court to order Northern to reimburse additional reasonable expenses. Northern shall be responsible for reimbursing all reasonable and necessary expenses of performing the preventive work required by shut-in including, if appropriate, the use of a blowout preventer during removal of well equipment. All such work shall be performed in accordance with Kansas laws and regulations.

(Doc. 429, 3-4.)

In accordance with the instructions from Judge Brown, the undersigned magistrate judge hereby sets the following procedure concerning requests to test the subject wells and deadlines for submission of any requests for testing which applies to both Case No. 08-1405 (and 08-1400) and Case No. 10-1232:

1. In Case No. 08-1405, Northern has identified the tests it wishes to conduct on the subject wells, including fluid level shots, gas sampling, and pressure testing. *See* Doc. 425-2.

2. In Case No. 08-1405, Defendants L.D. Davis et.al., have objected to Northern's requested tests. (Doc. 427.) Nash has also objected to Northern's request for testing. (Doc. 425-4, at 2.)³ The court has considered these objections and finds that they should be overruled and that Northern should be entitled to conduct the tests it has designated <u>during the time period set by the court in this order.</u>⁴ While Northern may not have followed the letter of Rule 34 in requesting tests, it has substantially complied with the requirements of the rule by the filing of its motion (Doc. 425), and L.D. Davis and Nash have had the opportunity to object and state the basis of their objection. The court also notes that all parties contemplated that some testing would be required before the wells were shut in, even if the scope of the proposed tests may have been expanded from statements made during the hearing on the preliminary injunction. The court does not believe that either L.D. Davis or Nash will be unduly burdened by the testing since they have indicated some desire to conduct their own tests on their wells. If they wish to minimize any duplication of efforts, they can, if they so desire, conduct their

---

³ It appears that Northern has stated to Nash that it does not intend to conduct further tests on the Nash wells. (Doc. 423-2, at 1.)

⁴ This Order allows testing on a one-time basis only, and not on a continuing basis during the pendency of these cases.

own tests at the same time as Northern and any other nonowner tests are conducted on the L.D. Davis and Nash wells pursuant to this Order.

3. Any owner of a well(s), including any working interest owner, royalty owner or landowner, may test their own well(s) without the necessity of further court approval. Those tests do not need to be conducted at the same time as tests requested by any nonowners and provided by this Order, but it would appear to be more efficient and less disruptive if all tests on any given wells were conducted at the same time.

4. It appears that Val and Northern have reached an agreement for the testing of Val's wells on January 18, 2011. (Doc. 425-5.) If those agreed tests have not yet been conducted, they may be conducted at a time agreeable to Northern and Val; provided however, that these voluntary tests do not preclude other tests of the Val wells if requested by nonowners pursuant to this Order. Val has indicated that it will remove the rods and tubing from its wells, therefore any tests must be accomplished prior to that procedure.

5. Not later than **February 3, 2011**, any nonowner who wishes to test one or more of the subject wells shall file a notice with the Court identifying the wells they wish to test, the specific tests they wish to conduct, and the name of the

contractor who will conduct the well tests. Northern has already provided this information and does not need to file any further requests.

6. Any well owner who objects to the specific tests requested by a nonowner shall file that objection by **February 8, 2011.** L.D. Davis and Nash do not need to renew their objections to further testing which they have already made concerning Northern's request.

7. The Court will issue an order by **February 9, 2011** concerning any proposed requests for testing by nonowners and any new objections to those tests.

8. Any tests allowed by the court on the wells by any non-owner, including the tests requested by Northern and allowed by this Order, shall be conducted during the week of **February 14, 2011.** All nonowner parties who request testing of wells, including Northern, shall confer with the owners of the subject wells to be tested to see if an agreement can be reached concerning the specific day of the week on which the tests will occur for the convenience of all parties. <u>However, if no other agreement is reached, any Val wells will be tested on February 14, 2011; any Nash wells will be tested on February 15, 2011; and any L.D. Davis wells will be tested on February 16-17, 2011.</u>

**IT IS THEREFORE ORDERED** that Plaintiff Northern's Motion to Resolve Parties' Dispute is hereby granted as set forth in this Order;

**IT IS FURTHER ORDERED** that any testing of the subject wells by Northern and by any other non-owner shall be conducted in the manner and within the time periods set out in this Order.

Dated at Wichita, Kansas, on this 27th day of January, 2011.

s/ D<small>ONALD</small> W. B<small>OSTWICK</small><br>
Donald W. Bostwick<br>
United States Magistrate Judge