IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NORTHERN NATURAL GAS COMPANY, ) No. 08-1405-WEB-DWB
) (Consolidated with No.
Plaintiff, ) 08-1400).
)
v. )
)
L.D. DRILLING, INC., )
VAL ENERGY, INC., )
NASH OIL & GAS, INC., et al., )
)
Defendants. )
)

**<u>Memorandum and Order</u>**

This matter is before the court on a motion by L.D. Drilling and other defendants[1] to stay, pending appeal, the preliminary injunction order entered by the court on December 22, 2010. *See* Docs. 420, 438. The injunction requires that by February 21, 2011, the above-named defendants cease or refrain from producing natural gas from twenty-five specified wells pending a trial on the merits of the litigation. The defendants argue the injunction should be stayed because they have a strong position on the merits, because they will suffer irreparable harm without a stay, because Northern has an adequate legal remedy for any harm, and because the public interest does not favor the injunction.

Under Fed.R.Civ.P. 62(c), while an appeal of an injunction is pending, the court may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the

---

[1] The movants are: L.D. Drilling, Inc., Paul J. Beaver, L.D. Davis, Carl Dudrey, HJB, Inc., Larry E. Keenan, Timothy R. Keenan, Bill R. Milton, Ivan W. Milton, Lisa M. Milton, Tammy Milton, Kim B. Shoemaker, Nancy H. Shoemaker, Whitetail Energy, Inc., and Steven Eugene Young. Doc. 438 at 1.

opposing party's rights." The court should consider the following factors in determining whether to grant a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Securities Investor Protection Corp. v. Blinder, Robinson & Co., Inc*., 962 F.2d 960, 968 (10th Cir. 1992). Where the moving party has established that the three "harm" factors tip decidedly in its favor, the "probability of success" requirement is somewhat relaxed, and is satisfied by showing questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation. *See F.T.C. v. Mainstream Marketing Serv., Inc.*, 345 F.3d 850, 852-53 (10th Cir. 2003).

The court previously explained why it believed Northern was likely to prevail on the merits of its nuisance claim. It will not repeat that assessment here, except to address certain issues raised in defendants' motion to stay. Essentially, defendants argue the court's ruling was based on a faulty interpretation of the *Union Gas* case, the *Martin, Pringle* case, and Judge Schmisseur's holding in the Pratt County litigation.

First, defendants contend the court erroneously interpreted *Union Gas Sys., Inc. v. Carnahan*, 245 Kan. 80 (1989) to find that, beginning from the date Northern obtained a FERC certificate for expansion, Northern retains title to any storage gas that thereafter migrates to the Expansion Area. A unique aspect of *Union Gas* was that it addressed the question of who has title to storage gas that migrates into a newly certified storage area between the initial date of certification and the time the injector subsequently obtains rights to the storage area by

condemnation. That same issue is implicated here with respect to storage gas currently migrating to the Expansion Area. As to this limited time frame, and in the context of discussing a setoff to a condemnation award, the Kansas Supreme Court held in *Union Gas* that the rule of capture did not apply: "As soon as Union's storage gas operation became authorized and its gas identifiable, the gas was no longer *ferae naturae* and subject to the rule of capture. The title to Union's gas remained in Union." Thus, Union retained title to storage gas that migrated after it obtained a KCC certificate "even though it acquired no title to the DeTars' property until the [subsequent] date of the taking...." *Union Gas*, 245 Kan. at 88.

It must be conceded that the continued vitality of *Union Gas* is unclear after the enactment of K.S.A. § 55-1210. To the extent there is any conflict, the subsequently adopted statute controls. But nothing in section 55-1210 addresses the effect of certification of a storage area, and the Kansas Supreme Court has not clarified whether the *Union Gas* rule would apply in these circumstances. The court sees nothing in the statute that is inconsistent with this pre-existing rule. On the contrary, the statute was intended to establish an injector's property rights to injected storage gas, and it provides in part that gas injected into underground storage facilities "shall at all times be the property of the injector" and in no event shall such gas be subject to the right "of any person, other than the injector ... to produce [or] take, ... either by means of the law of capture or otherwise...." Even if subsection (c) of the statute were construed to limit an injector's title in migrating gas only to the extent of "adjoining property," as defendants argue, "adjoining property" would logically include property that FERC or the KCC has certified for inclusion in the storage facility. No Kansas court other than *Union Gas* has addressed the issue of title to migrating storage gas in such circumstances.

3

Defendants contend this is all a re-hash of the same "revesting" argument rejected by the Kansas Supreme Court in *Northern Nat. Gas Co. v. Martin, Pringle, Oliver, Wallace & Bauer, LLP,* 289 Kan. 777, 217 P.2d 966 (2009). That is clearly not so. The issue in *Martin, Pringle* was the effect of K.S.A. § 55-1210 on storage gas that had migrated before adoption of the statute. Prior to enactment of 55-1210, the general rule in Kansas was that the Rule of Capture applied to migrating storage gas. Under that rule an injector lost title to injected gas which migrated to adjoining land. *Martin, Pringle*, 289 Kan. at 789. Thus, as to any storage gas that migrated before adoption of the statute, "the landowners adjoining Northern's underground gas storage area possessed the legal right to produce and keep the injected gas which had migrated onto their property, unless and until Northern obtained a certificate to expand its storage area onto their land and paid them for that privilege through a condemnation action."[2] *Martin, Pringle*, 289 Kan. at 791. With the adoption of K.S.A. § 55-1210 on July 1, 1993, Kansas law was changed to provide that an injector retains title to storage gas that migrates to adjoining

---

[2] Defendants contend the Supreme Court's observation that Northern had to obtain a certificate *and pay in condemnation* precludes any finding that issuance of a FERC certificate alone allows Northern to retain title to currently migrating storage gas. Doc. 438 at 5-6. But this statement in *Martin, Pringle* referred to storage gas that was already in place on the landowners' property as of July 1, 1993. Under the Rule of Capture, Northern lost title to such gas when it migrated, and Northern could not thereafter regain title except by paying for it in condemnation. This is distinct from *Union Gas*, which said the Rule of Capture ceases to apply – i.e., an injector prospectively retains title to migrating storage gas – once the injector obtains a regulatory certificate. There is no indication that *Martin, Pringle* overruled the *Union Gas* exception, and in fact the Court suggested otherwise, noting "*Union Gas* clarified that such a utility has the statutory ability to obtain a certificate for an underground gas storage area and that the failure to use that remedy places the utility squarely under [*Anderson*, i.e., the Rule of Capture]. Given that Northern *did not obtain a certificate to condemn* the adjacent landowners' property prior to July 1, 1993, the adjoining landowners possessed a right, title and interest in and to the gas which had migrated to the adjoining property as of that date." *Martin, Pringle*, 289 Kan. at 790-91 [emphasis added].

4

property. In the *Martin, Pringle* case, Northern argued that title to any storage gas which had migrated prior to July 1, 1993 was "revested" in Northern when the statute took effect. The Supreme Court rejected that argument:

> An injector of natural gas into underground storage, who demonstrates such gas was originally injected into underground storage but migrated to adjoining property or to a stratum or portion thereof which has not been condemned as allowed by law or otherwise purchased, loses title to or possession of the migrated gas *when the gas migrated before July 1, 1993*, the effective date of the controlling statute, K.S.A. 55-1210, and was not captured or reduced to possession by another prior to July 1, 1993.

*Martin, Pringle*, 289 Kan. at 791-92 [emphasis added].

The *Martin, Pringle* opinion makes clear that K.S.A. § 55-1210 operated prospectively only and did not "revest" title to any previously migrated storage gas. Nothing in the court's preliminary injunction order contradicts that holding. The injunction here was based in part on a conclusion that Northern likely retains title to any storage gas that migrates to the Expansion Area after issuance of the FERC certificate on June 2, 2010, as well as a finding that the defendants' continued production under these circumstances constitutes an unreasonable interference with the adjoining storage field. *Union Gas* held that once such a certificate is issued, the injector *retains* title to storage gas that thereafter migrates from the injector's control into the certified area, even though the injector has not yet obtained the property through condemnation. This in no way involves a "revesting" of title because the injector never lost title to such gas.

Defendants lastly contend the merits weigh in their favor because this court's findings contradict Judge Schmisseur's summary judgment ruling. Defendants note that after FERC issued the Certificate, Northern asked Judge Schmisseur to modify his ruling that the gas

5

purchasers had not converted Northern's gas, but he declined to do so. Defendants argue this court's preliminary injunction is based in part "on the erroneous understanding that Judge Schmisseur partially granted Northern's motion to amend his summary judgment ruling and 'so limited his ruling to gas produced prior to June 2, 2010, the date of the FERC Certificate....'" Doc. 438 at 6. Defendants say Judge Schmisseur declined to modify his ruling at all, and they argue he "was well aware that under his ruling the Defendants would continue to produce their wells," as shown by the fact that he ordered all gas payments to be held in suspense pending further order.

Judge Schmisseur in fact denied the motion to amend his initial summary judgment ruling, and the court did not mean to imply otherwise. See Doc. 353, Exh. 14. But as the court noted previously, the transcript of the June 30, 2010 hearing in Pratt County District Court makes clear that Judge Schmisseur refrained from ruling on Northern's contention that, by virtue of the FERC Certificate, Northern retained title to any storage gas that migrated after June 2, 2010. The Judge said that Northern lost title to storage gas that migrated to defendants' wells before June 2, 2010, but he declined rule on the effect of the FERC Certificate because he found Northern would suffer no harm while an appellate court reviewed the former ruling:

> I try to make things as simple as I can make them and I think the rulings that, that adjoining means what I said that it did, adjoining and adjacent have different meanings. Our Supreme Court has previously said it's one mile. That's pretty simple. * * *
>
> And that if gas got more than a mile from the storage field I think, I think it's relatively simple and it was my intention to make a relatively simple ruling and I have not heard anything today as to matters prior to June 2nd that would convince me to change that order, that my Memorandum needs to be changed in any way, shape or form.

6

> \* \* \*
> The issue from June 2nd forward, I think, is a much different animal. If, in fact, this order stands, sounds like they're not going to appeal it, but it sounds like it's one of those no harm, no foul deals. As long as Lumen and ONEOK are holding the money, ... there may be a foul.
>
> They – under the FERC order of June 2nd, they may be producing your [Northern's] gas, but you're not harmed because the money's there and at the point in time you win, if that's finally where it all ends up, there's your money.
>
> So I'm not certain that I need to enter some complicated order. \* \* \* There may be a foul, but there's no harm.
>
> \* \* \* And, ... if there's no harm, I don't see why this Court should try to enforce the foul.
> \* \* \*
> The Memorandum is the Journal Entry. The Court – as long as – ONEOK and Lumen are ordered to suspend runs pending further order of this Court or some other Court having jurisdiction. That should address the issue that we're harmed. They're producing our gas. They're converting our gas. We're harmed. \* \* \* You're not harmed anymore, because nobody's getting paid and your money is there if you win.
>
> \* \* \*
>
> And I think the answer comes in negotiation or it comes in condemnation and prior to June 2nd, [the] Kansas Supreme Court can tell me if I'm right or not. Tell you folks if I was right or not. And everything else is a moot point because it's suspended. There's no harm. That's my ruling. And it's as final as it's going to get.

*See* Doc. 353, Exh. 13, Pp. 99-103.

Applying collateral estoppel, this court previously concluded that the Pratt County District Court judgment bars Northern from claiming title to any storage gas that migrated to the Expansion Area before June 2, 2010. *See* Doc. 382 at p. 30 ("The elements of collateral estoppel are thus established, but only insofar as Northern's conversion claims arising prior to June 2,

2010 are concerned."). Unless the state court judgment is altered on appeal, Northern will have to pay just compensation in order to obtain title to any such storage gas in the condemnation action. But under the record noted above, the state judgment clearly does not bar Northern from asserting title to storage gas that has migrated or is migrating to the Expansion Area after June 2, 2010. Judge Schmisseur did not rule on that issue, and the defendants have articulated no rational basis for finding that issue barred by collateral estoppel.

In sum, defendants have not shown that this court's preliminary injunction contravenes any part of *Martin, Pringle, Union Gas*, K.S.A. § 55-1210, or the state court judgment. Under Kansas law, defendants have a right to produce gas – even storage gas – as to which they or their lessors hold title. But the evidence here shows that production on their leases is substantially interfering with Northern's right to the use and enjoyment of its property, and is causing storage gas as to which Northern retains title to continue migrating out of the storage field. For reasons previously stated the court finds this interference is unreasonable. This finding is based on a unique set of circumstances, including that the Expansion Area has been certified for inclusion in the Cunningham Storage Field, the defendants' wells are producing primarily (and in some instances entirely) storage gas, and the defendants' property is the subject of the pending condemnation action. The court concluded that Kansas law – including *Union Gas* and a statute specifically establishing an injector's title to injected storage gas – would allow a nuisance claim in such circumstances to halt the unreasonable interference. *Cf*. K.S.A. § 55-1210(d) (injector may compel compliance with this section by injunction). Defendants' arguments do not persuade the court that they are likely to prevail on the merits of the claim.

Neither is the court persuaded by defendants' arguments about the relative harms from

8

staying or not staying the injunction pending appeal. Defendants' claim they will suffer irreparable harm from an inability to continue testing the wells. While more tests are probably always preferable to fewer tests when it comes to gathering evidence, this claim of irreparable harm is largely speculative and unsupported. Defendants have not shown that the 60-day period allowed for testing by the court, together with the previous period and any tests conducted previously, is inadequate to produce relevant and reliable evidence in this action or in the condemnation proceeding. Nor have defendants shown that future testing is precluded, particularly in view of the fact they have apparently elected not to remove the tubing, rods or other equipment from the wells. Defendants' other claim of irreparable harm is from the inability to make productive use of their property while the injunction is in effect. Although the court recognizes this harm is significant, the defendants have a remedy in damages for any wrongful restraint imposed, and they stand to receive just compensation for any property of theirs condemned and taken by Northern. By contrast, the harm to Northern from a stay of the injunction involves not only a loss of property, but an inability to restore containment of the storage field. This is not an injury for which Northern has an adequate legal remedy. Northern presented evidence that the migration pathway from the storage field will increase in size and scope if the defendants continue production in the Expansion Area. The vast majority of that production, according to the evidence presented, now consists of storage gas from the Cunningham Storage Field.

The court concluded in its preliminary injunction order that the public interest would be served by halting production from the Expansion Area and allowing Northern to re-establish the stability of the Cunningham Storage Field. Defendants contend the court has "accepted

9

Northern's pose as champion of the public interest," and argue the court is improperly allowing Northern to obtain under state law what Congress refused to permit it to do under federal law. They note Congress expressly left regulation of gas production to the states in the Natural Gas Act, and they argue the KCC alone has jurisdiction to determine whether the defendants' gas production impacts Northern's rights. The court noted in prior orders that no showing has been made that KCC's rules and regulations for the protection of correlative rights to a common source of supply would apply to production of previously-injected storage gas migrating out of a federally-certified storage field. *Cf. Northwest Central Pipeline Corp. v. State Corp. Com'n. Of Kansas*, 489 U.S. 493 (1989) (the "production" and "gathering" of natural gas, which is reserved to the states, refers to "the physical acts of drawing gas from the earth and *preparing it for the first stages of distribution*."); *Northern Natural Gas Co. v. State Corp. Com'n. Of Kansas*, 372 U.S. 84, 90 (1963) ("Appellant [Northern] is not a producer but a purchaser of gas from producers, and none of its activities in Kansas shown upon this record involves 'production and gathering, in the sense that those terms are used in § 1(b)....'"). The evidence here shows that the storage gas of the Cunningham Field is in interstate commerce, with gas stored for eventual shipment to other states to meet energy needs in other areas of the United States, and that defendants' conduct is interfering with the accumulation of that storage gas. At any rate, the court's injunction is a remedy provided by Kansas common law – the right to abate a nuisance that unreasonably interferes with the use and enjoyment of property. Such a remedy is available even where the conduct constituting the nuisance is itself a lawful activity, as is defendants' production of native gas from their leases.

*Conclusion*.

In sum, despite the extraordinary nature of the relief granted, the court is not persuaded that the injunction should be stayed pending appeal. The evidence presented thus far shows that the defendants' wells are producing storage gas that is migrating from the Cunningham Storage Field. The wells are in an area that FERC has now certified for inclusion in the Cunningham Storage Field. FERC's conclusion was based on a finding – consistent with the evidence here – that the Expansion Area is in communication with the storage field and that production from the defendants' wells is causing storage gas to migrate to those wells. The Expansion Area is now the subject of a pending condemnation action brought by Northern, meaning the defendants will likely receive just compensation in that action for any property interests taken by Northern as a result of condemnation. Unless production from these wells is halted, Northern will be unable to reestablish containment of the storage field. After weighing all of the circumstances, the court concludes that the motion to stay the preliminary injunction should be denied.

Defendants' Motion to Stay or Suspend the Court's Preliminary Injunction Order Pending Appeal (Doc. 438) is DENIED. IT IS SO ORDERED this  15th   Day of February, 2011, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge